B. F. Bibb. Defendant in Error, *vs.* Mary E. Means, Plaintiff in Error.

1. *Land—Purchase of, under inducement from one having prior claim—When does and when does not work es toppel—Bill in equity for title—Interest—Writs of possession—Agency.*—A. purchased land at execution sale which the debtor in the execution held under a bond for title from B., but for which he had not paid. C. with the consent of A. and under an agreement with him to pay the sheriff the amount bid by A. at the execution sale, paid the purchase money to B. and obtained the legal title, but failed and refused to pay the sheriff, and judgment was obtained against A. for the amount of his bid. *Held*, that A. on payment of the amount paid by C. to B. was entitled to a decree vesting the legal title in him.

### Error to Circuit Court of Hickory County.

*Barry & Lealon*, for Plaintiff in Error.

I. Bibb was estopped from claiming the property after inducing the defendant to purchase it. (Huntsucker vs. Clark, 12 Mo., 333 ; Newman vs. Hook, 37 Mo., 207 ; Bunce vs. Beck, 46 Mo., 327 ; Rutherford vs. Tracy, 48 Mo.. 326 ; Rice vs. Bunce, 49 Mo., 231.)

II. The court could not issue a writ of restitution in this case. Such writ only lies when the successful party has once had possession, and has been wrongfully kept out of the use of the property.

*W. P. Johnson,* for Defendant in Error.

I. In order to constitute an estoppel some act of the one party must be done or suffered that has misled the other. There was nothing of the kind here. (Bigel. Estop., 473.)

II. All the money that Mrs. Means should have received from Bibb, was the amount she actually paid for the quit-claim deed, and this sum the court decreed her.

Hough, Judge, delivered the opinion of the court.

The object of the petition in this case was to compel the defendant to convey to the plaintiff the legal title to certain real property therein described.

In the year 1858 James Atkinson, acting under a power of attorney from George Dixon and wife, executed to Mark L. Means, in consideration of the sum of sixty dollars, to be paid by said Means, a bond for title to two lots in the town of Warsaw, Benton county, Mo., which were the property of the wife of said Dixon. In 1863 Means died intestate, without having paid any portion of the purchase money. On the 12th day of October, 1868, said lots were regularly sold by the administrator of the estate of said Means to the plaintiff, who, after the timely approval of said sale by the proper court, received a conveyance therefor from said administrator, bearing date January 21, 1869. On the 3d day of February, 1869, George Dixon, who had in the meantime become invested with the title to these lots through the last will of his wife, then deceased, executed to the defendant, who is the widow of said Means, a deed for the two lots in question for the sum of sixty dollars paid by her to said Dixon. The defendant was fully aware at and before the time said deed was obtained by her of the condition of the title and of the purchase by the plaintiff at the administrator's sale. The plaintiff, Bibb, brought into court for the use of the defendant the sum paid by her, and asked that she be compelled to convey to him the title to said lots, and for general relief.

The following extract from the defendant's answer contains the substance of her entire defense: "that said conveyance from George Dixon to said defendant took place long after said administrator's sale to plaintiff, and with the knowledge and assent of said plaintiff, and by and with the advice and consent of said plaintiff, and with the full and perfect understanding by and between said plaintiff and said defendant that said Geo. Dixon was conveying said two described lots 7 and 8, in block 2, in good faith to said defendant, and with the express understanding on the part of said plaintiff that he acted as the agent of defendant in purchasing the said two lots 7 and 8, block 2, in Whipple and Ballou's addition to Warsaw, at said administrator's sale, and with the further understanding on the part of said plaintiff that when he, said

plaintiff, paid the amount of his said bid, $525, at said administrator's sale, which defendant avers plaintiff has never yet done, that then said defendant would be indebted to said plaintiff in said amount of money so advanced by said plaintiff to and for said defendant and as her agent, and that said plaintiff held whatever title he derived to said two described lots by virtue of said administrator's deed in trust for, and as the sole and separate property of, said defendant." The foregoing allegations were denied by the plaintiff. The phraseology of that portion of the foregoing extract which refers to the understanding of the plaintiff alone is peculiar, though we shall treat it as having been not artfully but inartificially drawn, and as intended to allege an agreement between the parties.

The testimony of the defendant in support of her plea was as follows: "I had not spoken to Mr. Bibb about bidding off the lots before the administrator's sale, but Mr. Bibb came to my house the same evening he bid off the property and told me he had bid off lots 7 and 8, block 2, for me, and that I could have them, and that I must pay the amount of his bid, $525. I thanked him, and told him I would do so if I could. I went on and got title to the lots from Dixon in my own name and for my own benefit, with the knowledge of Mr. Bibb, and under his advice. Mr. Bibb never intimated to me that he claimed the title I got from Dixon, or expected any interest in the same, either before I got the deed from Dixon or at the time. He did not set up any adverse title to mine at that time, and I never heard that he claimed title to the lots in question until he commenced this suit. My daughter has taught school and paid off some of the men who helped me to raise the money to get my title from Dixon. Mr. Bibb paid $15 of that money, and told me that I should pay the others first and pay him when I got it. It was understood by Mr. Bibb and myself that the deed I got from Dixon was for me and my benefit, and that I should pay Mr. Bibb the money he bid at the administrator's sale as soon as I could."

It appears from the record that the administrator of Means sued Bibb for the amount of his bid, and an answer filed by Bibb in that suit in 1869, together with a supplemental answer filed by him in 1870, and an amended answer filed at the February term, 1871, were read in evidence by the defendant, in the last of which Bibb set up that he had bought the lots at said administrator's sale for Mrs. Means and as her agent, and not on his own account. The verdict and judgment in that suit are not given, but other testimony in the cause shows that the administrator obtained judgment against Bibb.

The plaintiff testified, in substance, that he bid off the property in his own name for the sum of $525, and supposed at the time that he was getting a perfect title. Mrs. Means knew nothing of his purchase until he told her. His purpose was to let her have the property if she would pay to the administrator the amount of his bid. When he informed Mrs. Means that he had bought the property, and that she could have it if she would take the bid off his hands she thanked him, and said she would pay the bid if she could raise the money. He also told her that she could have until the next sitting of the probate court, a period of three months, to raise the money. Plaintiff further stated that he aided Mrs. Means in obtaining the money which she paid for the conveyance from Dixon, and that said deed was taken in her name because she had promised to take the property off his hands, and he thought she would do so. He also told her that he thought, as she was the widow of Means, she could get a deed from Dixon on better terms than he could. He also testified that the defendant was insolvent.

At the trial of the suit brought by the administrator against Bibb for the amount of his bid, Bibb was a witness, and the defendant endeavored to show that he then testified that he purchased the property in controversy as the agent of Mrs. Means. Plaintiff, on the other hand, introduced evidence to show that his testimony was to the effect that he bought the property for Mrs. Means, and intended she should have it, but he did not act as her agent.

The circuit court rendered a decree for the plaintiff and awarded a writ of possession, and defendant brings the case here by writ of error.

The right of the defendant to dower in the premises in controversy, as well as her right to the same under the homestead law, have been urged upon the attention of this court, but no such questions are presented by the record before us, and we cannot therefore notice them.

Defendant's counsel insist that the plaintiff is estopped from claiming any right to the land by reason of his having induced the defendant to expend money in purchasing the title from Dixon.

We do not perceive that there is any question of estoppel in this case. Both parties concur in stating that the purchase was made by the defendant and the title taken in her name, in pursuance of an agreement between them, and their respective rights must depend upon the terms of that agreement. What that agreement was, and whether under the circumstances the defendant should be allowed to retain the title so acquired, are the questions presented for our determination.

No question as to the statute of frauds is made in the case.

Mrs. Means contends that the agreement was that Bibb should pay to the administrator the amount bid by him for the property, and that she should become the debtor of Bibb therefor, and that she purchased the title from Dixon with that understanding. Bibb, on the contrary, asserts that the agreement was that Mrs. Means should succeed to his rights as purchaser at the administration sale by paying the amount of his bid to the administrator, and that he advised and consented to the acquisition by her of the legal title from Dixon in consequence of this agreement on her part. It is obvious that if Mrs. Means correctly states the agreement, Bibb has mistaken his cause of action. If Bibb's statement of the agreement be correct, and Mrs. Means has failed to comply with the terms on which she was permitted to acquire the

legal title, then she holds such title in trust for Bibb, and he is entitled to have it conveyed to him.

It is evident, from the testimony of both parties, that Bibb did not purchase at the administration sale as the agent of Mrs. Means, and our investigation is narrowed down to the inquiry when and to whom it was agreed that Mrs. Means should pay the sum bid by Bibb. The direct testimony on this point is meagre, contradictory and very evenly balanced, and in weighing it we shall have to be governed to some extent by the circumstances of the parties.

It will be remembered in the first place that the testimony shows Mrs. Means to be insolvent. If we accept her version of the agreement as correct, no time was fixed for the payment of the money by her; plaintiff was to pay the money for her and she was to pay him when she could. No note was to be given, no security was to be provided, and there was no agreement as to interest or rent. The answer filed by the plaintiff in 1871 to the suit brought by the administrator against him, on which that cause seems to have been tried, is not unimportant. The present suit was not brought until January, 1872. The defendant having accepted the purchase made by plaintiff and intended for her benefit, the plaintiff took the ground in that answer that he had bought as the agent of the defendant and for her benefit and not for himself, and that she therefore should be held accountable for the purchase money and not himself. That answer can be reconciled with the testimony of the plaintiff in this suit. It contained a false conclusion of law. His counsel in that suit evidently attempted to treat the acceptance by Mrs. Means of his purchase for her benefit as a ratification of his act, and as creating, in contemplation of law, an agency from the beginning. The plaintiff made no claim to the title held by Mrs. Means until he became bound by a judgment to pay the purchase money. Weighing the testimony of these two parties in the light of all the circumstances, and of the principles which ordinarily govern human conduct in similar situations, we feel inclined to find the fact to be that there was an agree-

ment between the parties for a substitution of Mrs. Means as purchaser in lieu of the plaintiff, which Mrs. Means herself abandoned by failing to comply with the terms of plaintiff's purchase.

The decree of the circuit court for a conveyance must therefore be upheld, as the defendant cannot be permitted to retain the title acquired in pursuance of the agreement and at the same time repudiate the agreement. Mrs. Means was only entitled to the sum she paid without interest, as she was not required to account for rents and profits.

We see no error in the action of the court in awarding a writ of possession.

The judgment is affirmed. All the other judges concur.