THE COUNTY OF JOHNSON, *Appellant*, v. WOOD, *Administrator*.

1. **Executory Contract**: RECITAL. Where the recital in an executory contract contains stipulations which the parties evidently intended should be performed, the recital will constitute an operative part of the instrument.

2. **Dispositive Writings**: COMMON LAW RULES OF CONSTRUCTION MUST BE OBSERVED. The common law has furnished certain rules for the interpretation and construction of dispositive writings for the purpose of ascertaining from the language of such instruments the manner and extent to which the parties intended to be bound. These rules should be applied with consistency and uniformity, and it is not within the power of the courts to vary, change, or withhold their application.

3. ——: CONSTRUCTION CONTRA PROFERENTEM. The rule requiring instruments to be construed *contra proferentem* has no application, unless all other rules of exposition fail; and where a transfer of property is made by a functionary of the state government the rule is reversed, and nothing passes except such things as are clearly within the terms of the instrument.

4. ——: SWEEPING CLAUSE. A general sweeping clause contained in an instrument of writing, will be restricted and limited in its construction so as to refer to estates or things of the same nature and description, which are definitely and particularly described in the same instrument.

5. **Written Contract, Construction of.** Where a contract will admit of two different constructions, it is a rule of law that the construction which is consistent with duty, honesty and fair dealing, shall be adopted in preference to one which involves a breach of a public trust.

6. ——: PAROL EVIDENCE, INADMISSIBILITY OF. The meaning and effect of a contract in writing, logically deduced from the language in which it is expressed, by a correct application of the rules of construction cannot be varied, controlled or affected by parol testimony of the intention of the parties.

7. **Contract With County Court**: PAROL EVIDENCE. A contract made with a county court must be proved by the record alone and cannot be varied, contradicted or enlarged in its terms by oral evidence of the intention of the judges.

*Appeal from Johnson Circuit Court.*—HON. N. M.
GIVAN, Judge.

REVERSED.

The following is the contract of August 12, 1870,
mentioned in the opinion:

"Now, at this day, comes A. W. Ridings, and pre-
sents to the court here a modified contract between the
county of Johnson and the said A. W. Ridings, where-
upon it is ordered by the court that the presiding justice
of this court sign said contract, and that the clerk of
this court attest and affix seal of this court thereto.

" Which said contract is in words and figures follow-
ing, to-wit:

" Whereas the county of Johnson, in the state of
Missouri, on the 13th day of September, 1851, subscribed
to the capital stock of the Pacific railroad, the sum of
$100,000, being equal to one thousand shares of the
capital stock of said Pacific railroad, and has fully paid
the sum of $53,000, being the payment of five hundred
and thirty shares of the said capital stock, and the said
county of Johnson, on or about the 17th day of Decem-
ber, 1856, entered into and made a certain contract and
agreement with the said Pacific railroad for the issue of
certain bonds for and on account of said subscription with
certain terms, conditions and limitations therein con-
tained and expressed ; and the said county of Johnson, in
pursuance of the said agreement, did, afterwards, on the
first day of January, 1857, issue and deliver to the said
Pacific railroad, certain bonds for and on account of said
subscription, to-wit : Forty-seven bonds, all dated Jan-
uary 1st, 1857, and each for $1,000, and bearing seven
per cent. interest from date.   Thirteen of said bonds be-
ing payable nine years after date, and numbered from
eighty-eight to one hundred, both inclusive ; thirteen of
said bonds being payable eight years after date, and

numbered from sixty-eight to eighty, both inclusive ; and twelve of said bonds being payable seven years after date and numbered from forty-eight to fifty, and then on to sixty, inclusive ; and the remaining nine bonds, being payable six years after date, and numbered respectively thirty-three, thirty-four, thirty-five, thirty-six, thirty-seven, thirty-eight, thirty-nine, forty, and forty-nine. The interest on said first named thirteen bonds having been paid to July the first, 1857 (1859 ?), and no interest having been paid on the remaining thirty-four bonds, and said bonds are equal to four hundred and seventy shares of the capital stock of the said Pacific railroad, and now held by said Pacific railroad, and now wholly unpaid as to all the principal and all the interest on said thirty-four bonds, and, on said thirteen bonds, since July first, 1859, and said Pacific railroad claims that the county of Johnson is now liable to pay the whole principal and interest of said bonds, now amounting to about $88,500 in greenbacks, and if payable in gold then the said last named amount in gold ; and said county of Johnson claims that the said county is not liable to said Pacific railroad to pay said bonds, or any part of them, or any interest.

"And, whereas, Cruce, Colbern & Co., and William E. Borthick have become the purchasers of certain tax receipts issued by the county of Johnson, and have sued out writs of mandamus against the county court of said county of Johnson to compel said county court for and on behalf of said county of Johnson to issue to them shares of stock in the capital stock of said Pacific railroad, equal to the amount of said tax receipts held by them, and to be a part of the said $100,000 subscription by the said county, and in their application for said writs of mandamus, claim that the $100,000, as subscribed by the said county of Johnson, of right belongs to the holders of tax receipts paid on the same, and said actions are now pending and undetermined, in the Johnson court of common pleas for Johnson county, Missouri.

And, whereas, the county of Johnson desires to sell and dispose of all said stock as subscribed to said Pacific railroad, and to be released and discharged from all liability whatever, for, and on account of said forty-seven bonds, or any part, or any interest, and from said actions of said Cruce, Colbern & Co., and from said Borthick, and from any and all liability for and by reason, or on account of any and all writs, orders, judgments or decrees which may be issued or entered in said actions in said county, or any other court.

"And, whereas, the county court of said county of Johnson, for and on behalf of said county, has been attempting to arrange and settle said matters of difference with said Pacific railroad in reference to said forty-seven bonds, but has thus far wholly failed to make any satisfactory arrangements whatever, in relation to said bonds, and a resort to the courts of law would be very expensive to said county, and incur much expense, and said county of Johnson will be subjected to heavy expense in defending said petitions for said writs of mandamus, and has for some time past been negotiating for a sale of said stock, and the county of Johnson and A. W. Ridings have agreed upon the terms of sale of said stock. And the said county of Johnson sells, assigns and transfers to A. W. Ridings the said one thousand shares of stock in the capital stock of the Pacific railroad at the price of $77,000, and agrees to receive and accept of said forty-seven bonds in payment of $47,000 of said sum, and to give A. W. Ridings sixty days from this date to deliver to the said county of Johnson said forty-seven bonds, and to pay $27,000 ; and the balance of $3,000 is to be paid in cash, and if said Ridings fails in his agreement, then said $3,000 is forfeited to the county, and accepted by the county of Johnson as the full measure of her damage for all breach and failures of said Ridings, and in consideration of said sale and agreement of said county of Johnson, said Ridings agrees to purchase from said county the said

1000 shares of stock in said Pacific railroad, and to release and discharge said county from all liability whatever for, or on account of, said forty-seven bonds, and every part and all interest, and from all liability whatever on account, or by reason of said action of Cruce, Colbern & Co., or of said Borthick, or from any and all writs, orders, decrees and judgments in said actions, and to pay $3,000 cash, and to deliver up to said county the said forty-seven bonds, and to pay to said county said $27,000 within sixty days, and to hold and indemnify said county from all loss or liability whatever, by reason of said actions of Cruce, Colbern & Co., and said Borthick.

"Now, therefore, this agreement made and entered into this 17th day of May, 1870, by and between the county of Johnson, in the state of Missouri, party of the first part, and A. W. Ridings, party of the second part, witnesseth: That it is mutually agreed that the foregoing recitals shall be and hereby are made a part of this agreement, and the county of Johnson does hereby sell, assign, transfer and set over unto said A. W. Ridings, his executors, administrators, and assigns, the said one thousand shares of the said county of Johnson in the capital stock of said Pacific railroad, including the five hundred and thirty shares paid for in full, and also the four hundred and seventy shares of stock represented by said forty-seven bonds now held by said Pacific railroad, and does hereby authorize, empower and direct the treasurer of said Pacific railroad for, and on behalf of said county of Johnson, to transfer on the books of said company, to A. W. Ridings, the said one thousand shares so subscribed for by said county of Johnson, and to transfer the said five hundred and thirty shares of said stock separately to said A. W. Ridings, and to dispose of said four hundred and seventy shares in any manner which may be agreed upon by said Pacific railroad, and the said A. W. Ridings, as the agent for, and on behalf of the county of Johnson,

under his appointment, discretionary powers this day made and given to him as the agent for the county of Johnson, for and in consideration of the agreements and promises of said Ridings, as hereinafter named, and in consideration of $77,000 paid and to be paid by said Ridings, as follows: $3,000 cash in hand, the receipt of which is hereby acknowledged by said county of Johnson, and $27,000 in money to be paid in sixty days from this date, and to receive and receipt from said Ridings said forty-seven bonds with unpaid interest coupons thereon, in full payment and discharge of the $47,000 remaining of said purchase money; and the said A. W. Ridings hereby pays to the said county the said $3,000 in cash, and if the said Ridings fails to perform his agreement as hereinafter named, the said $3,000 is to be retained by said county absolutely as the full measure of all damages, and this agreement to be null and void; and said A. W. Ridings further agrees to pay the said county of Johnson said $27,000, and to cause to be cancelled and delivered to said county the forty-seven bonds, with all the unpaid interest coupons thereon within sixty days from this date, and to release and discharge said county of Johnson from any and all liabilities to said Pacific railroad from and on account of, or by reason of said forty-seven bonds, and each of them and all interest, and at his own proper costs, charges and expenses, to employ counsel and defend said actions of Cruce, Colbern & Co., and of W. E. Borthick, against said county, in the name of said county, and to pay off, satisfy, and discharge, and release any and all writs, orders, judgments, or decrees, which may be issued, made, or entered in said actions in any courts having jurisdiction, and to hold the county perfectly harmless and free from any and all loss, liability, damage, or injury of any kind on account of said actions, and to give such bond and security as the county court may require; and it is mutually agreed that whenever said Ridings complies with his foregoing agreements by

paying $27,000, and delivering up said forty-seven bonds with said coupons, and giving the bond and security provided for to indemnify the county of Johnson from all liability on account of said actions and writs of mandamus as before agreed upon, then there shall be delivered to said Ridings a certificate, stating that A. W. Ridings has complied with the terms of his contract with the county of Johnson, made on this day, to be signed by G. Will. Houts, presiding justice of the county court, and attested by the clerk of the county court of said county of Johnson, and upon the delivery of such certificate to the treasurer of said Pacific railroad, then the treasurer will transfer to said Ridings the said shares of stock as hereinbefore empowered and directed.

"In testimony whereof, the county of Johnson, by G. Will. Houts, the presiding justice of the county court of said county, and by virtue of an order of said county court, and the said A. W. Ridings, have executed, signed and sealed this agreement in duplicate this seventeenth day of May, 1870.

| { Seal } | "G. WILL. HOUTS, <br> "Presiding Justice. |

Of the county court of the county of Johnson, in the state of Missouri, for, and on behalf of said county of Johnson, the party of the first part, to the foregoing agreement.

| { Seal } | "A. W. RIDINGS." |

The foregoing contract is modified as follows:

"Said A. W. Ridings has not been able to comply with all the terms of the foregoing contract, on his part, within the time therein specified, but is now ready to deliver up to the county of Johnson the said forty-seven bonds as held by said Pacific railroad for collection, and *the said county of Johnson, by the terms of the foregoing contract, sold 530 shares of stock to said Ridings*

*as fully paid up,* and claims such payment, but has not now conclusive evidence of such payments.

"It is, therefore, mutually agreed by way of modification of the foregoing contract, that said A. W. Ridings shall deliver to said county of Johnson said forty-seven bonds in part payment of his part of said contract, and said county hereby acknowledges receipt of said forty-seven bonds, and the same shall be cancelled, in consideration whereof said county of Johnson hereby extends the time for payment by said Ridings of all other acts and things on his part to be done or performed for twelve months from this date, and said Ridings, in consideration thereof, promises and binds himself not to charge any interest on the county warrants, now held by him, amounting to $22,000, from and after the seventeenth day of July, 1870, and to pay out for county warrants, at par, $5,000, and to hold all said warrants, amounting to $27,000, for twelve months, without charging any interest for said time. And it is further agreed that said county may, at any time, pay off and take in any county warrants issued prior to July 17, 1870, and now held by said Ridings, and that said A. W. Ridings shall pay out for county warrants issued on and after July 17, 1870, at par, an amount equal to the amount or amounts so paid to him by said county for said warrants issued prior to July 17, 1870, and now held by him, and shall not charge any interest on such warrants so issued, after July 17, 1870, and paid for by him as aforesaid; so that the amount of warrants so held and carried by said Ridings, without interest, shall not exceed $27,000.

"And, in consideration of the premises aforesaid, said county of Johnson does hereby sell, assign, transfer and convey to said A. W. Ridings, all the stock or shares in the capital stock of the Pacific railroad, to which the county of Johnson may in any wise be entitled in law or

equity, after deducting said forty-seven bonds or four hundred and seventy shares of stock so delivered up and cancelled. It is further mutually agreed that if said A. W. Ridings fails to perform the contract, original and modified in said extended time of twelve months from this date, then he shall forfeit said $3,000, and also lose all interest on said warrants so held by him from and after July 17, 1870, as before provided, and said forty-seven bonds remain cancelled.

"In testimony, the said county of Johnson, by G. Will. Houts, the presiding justice of the county court of said county, by virtue of an order of said county court, and the said A. W. Ridings, have executed, signed and sealed this modification of the foregoing agreement in duplicate, this twelfth day of August, 1870.

{ Seal }                              "G. WILL. HOUTS,

"Presiding justice of the county court of Johnson county, for, and on behalf of said county.

{ Seal }                              "A. W. RIDINGS."

To the reading of said contract in evidence plaintiff objected for the following reasons: First, because the said contract shows on its face that there was no consideration for the making said modified contract, and that, therefore, the same was void. Second, because the said contract does not operate to convey any right or title to collect or retain the money in controversy in this suit to defendant. Said objections were, by the court, overruled, and the contract read in evidence and plaintiff excepted.

*W. H. Brinker* and *Land & Sparks* for appellant.

(1) It is a fundamental principle that parol testimony is inadmissible to contradict, vary or explain the terms of a written instrument. *Bruce v. Beck*, 43 Mo. 266;

*Murdock v. Ganahl*, 47 Mo. 135; *Racoullat v. Sause-vain*, 32 Cal. 376; *Hawley v. Brumargin*, 33 Cal. 394; 2 Pars. on Cont., p. 548 (5 Ed.) notes *a, b*; 1 Greenleaf Evid, p. 275 (12 Ed.) (2) Nor can parol testimony be resorted to for the purpose of showing what the knowl-edge and understanding of the parties to the contract was prior to and at the time of its execution; this must be gathered from the instrument itself. *Singleton v. Fore*, 7 Mo. 515; *Woodward v. McGraw*, 8 Mo. 161; *Koehring v. Muemminghoff*, 61 Mo. 403; *Edwards v. Smith*, 63 Mo. 119; Article in 2 Am. Law Reg. 134 (N. S.) This doctrine is limited only in cases where the contract is ambiguous; then parol testimony may be resorted to for the purpose of explaining such ambiguity. But words are not ambiguous because they are not intelli-gible to illiterate persons, but are ambiguous only where found to be of uncertain meaning by persons of compe-tent skill and understanding. *Scheultz v. Bailey*, 45 Mo. 69; 1 Greenleaf Ev., sec. 298 (12 Ed.); *Hawley v. Brumargin*, 33 Cal. 394. (3) Where the language of an instrument has a settled legal construction parol evi-dence is inadmissible to vary such construction. 1 Greenleaf, sec. 277, and note (12 Ed.); 2 Parsons on Cont. 551 (5th Ed.) (4) A written instrument is the con-summation of all previous and contemporaneous nego-tiations and propositions whether written or oral, and unless such propositions and negotiations are contained in the written contract they form no part of it and are inadmissible to vary, explain or control its terms. *Ed-wards v. Smith*, 63 Mo. 119; 1 Pars. on Cont., pp. 548, 550 (5 Ed.); *Hunt v. Johnson*, 24 Mo. 509; *Eads v. City Carondelet*, 42 Mo. 113; *Bruner v. Wheaton*, 46 Mo. 363. (5) Where two instruments are executed on different days relating to some subject matter and the one last executed refers to and is based upon the former one, in arriving at the intention of the parties in the latter instrument both should be construed together. *Noell v. Gaines*, 68 Mo. 649, and authorities there cited;

*Coddington v. Davis*, 1 Comst. (N. Y.) 186; *McDowell v. Hall*, 2 Bibb (Ky.) 611; *Van Hagan v. Van Ranssœllar*, 18 Johns. 420. (6) The universal rule of construction is that the whole instrument must be construed together in arriving at the meaning of any or all of its parts, and general words and sweeping clauses are, when preceded by special recitals respecting the same thing, limited and held to mean no more than what has been specially recited, *i. e., expressio unius exclusio alterius.* 2 Am. Law Reg. (N. S.) 134; *Schulenberg v. McGuire*, 42 Mo. 391; *Grumley v. Webb*, 44 Mo. 444; Metcalf on Contracts, 279; *Shelden v. Pease*, 10 Mo. 473. The mere extension of the time of the performance of a contract waives nothing but the time of performance. *Husbrouck v. Tappan*, 15 Johns. 200. (7) If it was intended that the defendant should acquire more stock than he had already gotten by the contract of May 17, 1870, it was a new contract in so far as it transferred more stock, and would require a new and sufficient consideration to support it. *Titus v. R. R.*, 14 Am. Law Reg. 252; *Alexander v. Lane*, 21 Mo. 536. (8) A contract under seal, though it recites no consideration, imports one, but none will be imported or implied other and different from the one expressed. *State v. Miller*, 1 Mo. App. 63; Parsons on Contracts (5 Ed.) p. 429; Powell on Contracts, 222. (9) The county court being mere agents of the county could not make a gift of the property of the people. The transfer must have been made on a valuable consideration. (10) The doing of that which one is under a legal obligation to do forms no consideration for a new agreement. *Price v. Cannon*, 3 Mo. 453; 1 Parsons on Contracts, 437 (5 Ed.); *Comstock v. Johnson*, 7 Johns. 87. (11) The consideration expressed in the modified contract shows that it was one wholly executed so far as the modified contract was concerned, although the $27,000 was not paid, the promise of Ridings to pay it for the conveyance of the five hundred and thirty shares on May 17, 1870, contract, although not yet paid

at the time of the making of modified contract, the promise to pay it and the conveyance of the stock, made it executed. 2 Blk. Com. p. 446, note by Christian. (12) A legal construction of the two contracts shows no title to the money in controversy because the recitals in the contract excluded the idea of any stock for interest on the forty-seven bonds being sold or conveyed, and the modified contract was made upon no consideration moving to plaintiff from defendant, and the collection of the money by defendant was wrongful and an action for money had and received to the use and benefit of plaintiff can be sustained. *Eno v. Woodworth*, 4 Comst. 249. (13) Mutuality is essential to every contract, and where an agreement is all on one side it is not binding for want of mutuality. 1 Pars. on Cont. 448. (14) If the contract of May 17, 1870 failed to express the intention of the parties to it—as alleged in defendant's answer—and the modified contract of August 12, 1870, was made for that purpose, such intention must be shown by the contract itself. If it shows that it was not made for that purpose it remains defective, and does not express their intention, and cannot be reformed in a court of law, but defendant must go into a court of equity for that purpose. No such relief, however, is sought by defendant in this case. 1 Story's Eq. Jurisprudence, p. 150, secs. 150 to 160 ; Metcalf on Cont., p. 273 (Ed. 1872) ; *Pearson v. McCahill*, 21 Cal. 122. (15) The contract of August 12, 1870, does not purport to reform the contract of May 17, 1870, but all idea of such intention is excluded by the recitals of such modified contract that it was made for the purpose of extending the time in which defendant was to perform his part of the May contract ; modification *ex vi termini* precludes the idea of enlargement. (16) Respondent's intestate could not use any knowledge acquired in and about his agency for the county to gain any advantage over the latter.

*J. J. Cockrell* for respondent.

A. F. ALEXANDER, Special Judge.—In September, 1851, the county of Johnson subscribed for one thousand shares, or $100,000, of the stock of the Pacific Railroad Company, to be paid for in six per cent. county bonds. The contract for subscription was modified in December, 1856, and the county court, in pursuance of the latter agreement, issued and deposited with the railroad company one hundred bonds of $1,000 each, bearing interest at seven per cent. and payable in equal instalments in five, six, seven, eight, and nine years. These bonds were to be sold by the railroad company, and as fast as they should be disposed of, a corresponding amount of stock was to be issued to the county, and those which should remain in the hands of the company unsold after the lapse of three years, were to be surrendered to the county and cancelled, and a corresponding amount of the stock of the original subscription annulled. It was, also, provided in this contract that the railroad company should issue to the county shares of stock corresponding in amount for any interest paid on bonds which should be eventually surrendered. The contract was again modified in 1860 by a new agreement, the effect of which was, among other things, to release the interest on all the bonds remaining unsold from July 1, 1861, to June, 1864, the railroad company having failed to complete the road to Knobnoster, in Johnson county, before the latter date. On May 17, 1870, forty-seven of the bonds remained in the hands of the railroad company, which, by the terms of these agreements, were to be delivered up for cancellation, and the county court having repeatedly endeavored to obtain them, without success, sold the one thousand shares of stock originally subscribed, to the defendant, A. W. Ridings, for the nominal sum of $77,000, $47,000 of which, however, was to be paid by the delivery of the forty-seven bonds and to secure the restoration of which the defendant was constituted the agent of the county, and the bonds were soon afterwards obtained

and cancelled. On October 28, 1874, the defendant recovered of the Pacific Railroad Company the sum of $9,458.75, the value of interest stock, to which the plaintiff became entitled by the payment of $8,225 interest upon the bonds which had been surrendered. And to recover this sum of $9,458.75 with the interest thereon as money had and received to the use of the plaintiff, this action is brought.

The defendant, in his answer, admits the recovery of the value of the interest stock from the Pacific Railroad Company, but claims title to the same by virtue of a modified contract, subsequently made with the county court, which he claims more properly expressed the terms of agreement between the parties and which, it is claimed, was made for the purpose of correcting a mistake or clerical error in the original contract. The replication is a general denial of these facts.

Neither party claiming a jury, the cause was tried by the court, and the defendant, who was permitted to open, introduced the following evidence : The modified contract pleaded in his answer, dated August 12, 1870, as shown by the record of the county court of Johnson county. The pleadings and judgment in a cause in the circuit court of St. Louis county, Missouri, in which A. W. Ridings, as plaintiff, recovered the sum of $9,458.75 of the Pacific Railroad Company, as the defendant. The orders of the county court of Johnson county for the issue of warrants in payment of interest on county bonds issued upon railroad subscriptions. These entries do not describe the bonds upon which the interest is paid. The report of George S. Grover upon the condition of the affairs of the county with the railroad company made in the year 1869 to the county court. This report shows that the records of the county court in respect to payments made upon the subscription of 1851, and an additional subscription made in 1853, were defective and incomplete, the entries having been carelessly made, and that some of the books had been lost.

It does not show with certainty that any interest had been paid on the forty-seven bonds. The defendant then introduced in evidence the record of the original contract, preceded by a recital of his proposal to purchase all stock owned by the county. Also, the forty-seven bonds, with five coupons detached from each, and as a substitute for the evidence it was admitted that the stock of the Pacific Railroad Company in May, 1870, was worth sixty-two cents on the dollar, and in August, 1870, it was worth seventy cents on the dollar, and that A. W. Ridings had otherwise complied with his contracts with the county court.

The deposition of I. H. B. Thornton, who had made the entries in the year 1870, as deputy clerk, was then read in evidence by the defendant, the statements of which are in substance: That the county sold and the defendant purchased all the stock in the Pacific Railroad Company, to which the county was entitled. That he knew the amount of interest which had been paid on the bonds from Grover's report, which was in the possession of the court, and from the absence of the five coupons from each when they were cancelled. That the county court had sent its presiding justice and Wells H. Blodgett, an attorney, to St. Louis to demand the restoration of the forty-seven bonds, and that they had been unsuccessful in their mission, and on their return had reported to the court that the charter of the railroad company prohibited the issue of stock for interest paid on the forty-seven bonds ; that nothing was said as to interest paid on the bonds in the negotiations with Ridings, and that the only purpose of the county court in making the contract of the twelfth of August, 1870, was to grant him further time in which to pay the purchase money.

G. Will. Houts, who had been the presiding justice of the county court in the year 1870, was introduced as a witness on the part of the defendant, and testified in substance, that previous to the time of making the contracts

with the defendant, he had examined the records of the county court, and was aware of the existence and contents of the agreements made with the Pacific Railroad Company, and that he had gone to St. Louis to obtain the forty-seven bonds three times, without success, and was in doubt whether the county could obtain any stock from the company; that the proposition of the defendant was in writing, and was to purchase the stock of the county at seventy-seven cents on the dollar, or $77,000, $47,000 to be paid in railroad bonds, $3,000 in cash, and the balance in county warrants. In regard to the contract of August 12, 1870, the witness states: "There was no other motive for making the modified contract than that of extending the time of the payment agreed to be made by defendant, Ridings, in the May contract. We did not intend to convey any more stock than was conveyed by the May contract. When we made the May contract we were intending to sell all the stock that the county owned in the Pacific Railroad Company."

The defendant, A. W. Ridings, testified that the forty-seven bonds were delivered up and cancelled at the date of the modified contract; the clerk cancelled the bonds and the coupons were cancelled by himself, and the court permitted him to take the bonds after cancellation.

Objections were interposed to the admission of all the evidence introduced by the defendant, and exceptions were saved by the plaintiff to the action of the court in overruling them.

Wm. McMahan, who was then presiding justice of the county court, was introduced on the part of the plaintiff and testified that in a conversation between W. H. Brinker and G. Will. Houts, in the office of Brinker, at which the witness was present, Houts had said emphatically two or three times that if the county court had known that the interest on the forty-seven bonds had been paid, and had known that the county was entitled to stock for the interest, the court would not have

sold the stock to Ridings for the price mentioned in the contract. This fact had been denied by Houts in his testimony.

The following declarations of law were asked by the plaintiff which the court refused :

"1. The court declares the law to be that the contract of August 12, 1870, between the plaintiff and defendant, taken in connection with the contract of May 17, 1870, which is incorporated in and forms a part of said modified contract of August 12, 1870, is the only evidence of the right, title, and authority of the defendant to have and retain the money in controversy, and that the parol evidence offered by defendant is incompetent and inadmissible to vary, enlarge, control, contradict, or explain the terms or legal effect of said contract, or to show the knowledge, understanding, or intention of the parties thereto at the time of making said contracts or prior thereto, but that the intention of the parties must be gathered from the contracts themselves.

"2. That the modified contract of August 12, 1870, must be construed in connection with the contract between the same parties, and in relation to the same subject matter of May 17, 1870, and that said contracts, nor either of them, vest any right, title, or authority in defendant to the money in controversy in this suit, and plaintiff must recover.

"3. That it stands admitted, by the answer of defendant herein, that the contract of May 17, 1870, between the plaintiff and defendant, did not convey any right or title to defendant to the money in controversy in this suit ; that if the modified contract of August 12, 1870, was made without any new or different consideration moving from defendant to plaintiff than the consideration upon which that of May 17, 1870, was founded, although the said modified contract was made under the seals of the parties thereto, that the same is void and ineffective to convey any title to the money in contro-

versy in this suit to defendant, and the plaintiff must recover.

"4. If the court should find the issues for the plaintiff, it must find that plaintiff is entitled to interest on the amount so found for plaintiff, at the rate of six per cent. per annum, from the date of the judgment recovered by defendant against the Pacific Railroad Company, introduced in evidence in this cause."

At the instance of the defendant, the court made the following declaration of law : "The court declares the law to be that upon the pleadings and evidence in this cause the finding must be for the defendant." The judgment was for the defendant, from which, after an unsucessful motion for a new trial, the plaintiff has appealed to this court.

The position taken by the defendant in his answer that the agreement of August 12, 1870, was made for the purpose of correcting a mistake, or clerical error in the original contract, cannot be maintained  The terms of this contract are embodied in the modification and form a part of it.  So far from alluding to any mistake that is supposed to have been made, it contains a stipulation that the de-, fendant will perform the contract, original and modified, in the extended time of twelve months and both parties are pledged to abide by its terms.  *Holder v. Tailor*, Brownlow and Gold. 23.  The sole purpose for which the modification was made is expressed in the recital which it contains, that the defendant had not been able to comply with all the terms of the original contract to be performed on his part, but was ready to deliver up the forty-seven bonds for cancellation, and was evidently to grant him an extension of time in which to pay a part of the purchase money for the stock which had been transferred to him.  This is conclusively confirmed by the testimony of all the witnesses who were examined in regard to this matter by the defendant.  As the answer contains the averment that the modified contract properly expressed the terms of agreement between the

The County of Johnson v. Wood.

parties, and as this instrument was not made for the purpose of correcting any mistake in the original agreement, the case is entirely stripped of its equitable aspect and depends exclusively upon the legal construction of the modified contract. The only difficulty which is presented is to determine the effect of the sweeping clause which is inserted at its conclusion, and which is expressed in these words: "And in consideration of the premises, said county of Johnson does hereby sell, assign, transfer, and convey to said A. W. Ridings all the stock or shares in the capital stock of the Pacific Railroad to which the county of Johnson may in any wise be entitled in law or equity, after deducting said forty-seven bonds, or four hundred and seventy shares of stock so delivered up and cancelled."

It will be observed that by the provisions of the original contract of May 17, 1870, the recitals which it contains are made a part of the contract itself, and this contract is not abandoned, but wholly incorporated in the modification of August 12, 1870, forming a part of it and constituting one entry of record. By this modification, the original contract is continued for the period of twelve months as the rule of action by which the parties pledge themselves to be governed. It is the sum of money due by virtue of the original contract that is forborne by the county, and the attention is expressly directed to the terms of it for an enumeration of the promises which the defendant was to perform within that time under the penalty of forfeiting the sum of $3,000. Hence, the original agreement and the modification constitute one single contract and must be construed together, and all documents to which reference is made may be examined with it in order to obtain a more perfect understanding of the subject matter. Bishop on Cont., sections 59, 577 ; *Barfoot v. Freswell*, 3 Keb. 465 ; *Saltoun v. Houstoun*, 1 Bing. 433 ; *Sampson v. Easterby*, 9 Bar. & Cr. 505 ; 54 Mo. 506. A view of the surrounding circumstances will strengthen the conclusion

that the terms of the original incorporated in the new agreement of August 12, 1870, cannot be regarded as a mere recital, but must be taken as an operative portion of the contract. It was provided in the agreement of May 17, 1870, that if the defendant should fail to perform his covenants therein within sixty days from its date, the contract should be void, and that a certificate of such performance, signed by the presiding justice of the county court and attested by the clerk and transmitted to the treasurer of the railroad company should be necessary to entitle him to a transfer of the shares of stock sold to him upon the books of the company. The time had elapsed and the defendant had failed to pay the purchase money. The title to the shares of stock had not been vested in the defendant, and the county court had the option of regarding the contract at an end and of disposing of the stock at an advance in price of eight cents on the dollar, or of waiving these advantages and insisting on the terms of the original agreement. *Shearman v. Fire Ins. Co.*, 46 N. Y. 526. In order to pursue the latter course, it was necessary to indicate the intention by some act or proceeding, and whatever may be thought of the wisdom of the measure, the course adopted by the court was to renew the contract. But, as the time of the performance stated in the former contract had elapsed, a new period was to be adopted in which to pay the money and interest. Instead of remodeling the whole instrument to conform to the new state of affairs, the court adopted the careless and unskilful method of copying the former instrument and engrafting the new arrangement upon it, concluding by the stipulation of each party to comply with it. The terms of the former agreement are, therefore, introduced in the form of a recital, but where it is evident from the tenor of the instrument that the parties contemplated and intended that the matters or acts recited should be performed, the recital will constitute an opera-

tive part of the agreement. *Payler v. Homersham*, 4 M. & Selw. 423 ; *Samson v. Easterby, supra.*

The great object of construction is to collect from the terms or language of the instrument, the manner and extent to which the parties intended to be bound. To facilitate this, the law has devised certain rules, which are not merely conventional, but are the canons by which all writings are to be construed, and the meaning and intention of men to be ascertained These rules are to be applied with consistency and uniformity. They constitute a part of the common law and the application of them, in the interpretation and construction of dispositive writings, is not discretionary with courts of justice, but an imperative duty. If it were otherwise, no lawyer would be safe in advising upon the construction of a written instrument, nor any party in taking under it. Lord Bacon, speaking of the rule that a deed must be construed most strongly against the grantor (Bac. Max. Reg. 3, p. 14), says : "It is to be noted that this rule is the last to be resorted to, and is never to be relied upon, but where all other rules of exposition of words fail ; and if any other come in place, this giveth place." It is based upon the principle of self-interest, and can never be invoked in the construction of an instrument made in the execution of a power, where the grantor possesses no interest in the property conveyed. *Cessante ratione cessat, et ipsa lex.* But where the conveyance is made . by a trustee for the public, no alienation is to be presumed that is not clearly expressed, and the rule is reversed. *Jackson v. Reeves*, 3 Caines 293 ; *Hagen v. Campbell*, 8 Port. 9 ; *Charles River Bridge v. Warren Bridge*, 11 Pet. 546 ; *Barton County v. Walser*, 47 Mo. 189. The rule that the whole agreement is to be considered and a liberal interpretation given, is of universal application. The construction is to be upon the entire deed or agreement, not merely upon disjointed or particular parts of it. The whole context, including recitals, must be considered in endeavoring to collect the intention of the

parties, although the immediate object of inquiry be the meaning of an isolated cause. It is upon these principles that a general sweeping clause in a deed, which is indefinite in its character, will be restricted and limited to estates and things of the same nature and description as those previously mentioned. *Moore v. McGrath*, 1 Cowp. 9; *Payler v. Homersham, supra; Rich. v. Lord*, 18 Pick. 325; *Lyman v. Clark*, 9 Mass. 235; *Jackson v. Stackhouse*, 1 Cowen 122; *Allen v. Holton*, 20 Pick. 458; *Chapin v. Clemitson*, 1 Barb. 311; *Butcher v. Butcher*, 4 Bos. & Pul. 113; Bac. Abr. Tit. Release K.; Story on Agen., 62, 67.

In *Moore v. McGrath*, 1 Cowp. 9, the lands intended to be granted were particularly named in the preamble, and afterwards described in the premises, and then followed a sweeping clause purporting to convey " all other of the donor's lands, tenements, and hereditaments in Ireland." The court held that nothing passed by the sweeping clause, and that its meaning was controlled by the particular description, although the donor had other estates in Ireland. In *Payler v. Homersham, supra*, it was *recited* in a composition deed that the defendant was indebted to his creditors in the several sums set to their respective names, and that they had agreed to take of him fifteen shillings in the pound thereon; and then the creditors in consideration of the said fifteen shillings in the pound paid to them, released the defendant from " all manner of actions, debts, claims, and demands in law and equity which they, or either of them, had against him, or thereafter could, should, or might have by reason of anything from the beginning of the world to the date of the release." It was held that the release did not extend to any thing but the respective debts recited and all actions and demands touching *them*, and that the general words had reference to the particular recital and were governed by it. The doctrine established by these cases has been recognized and approved by this court. In *Schulenberg et al. v. Maguire et al.*,

42 Mo. 391, it was stipulated in the contract for the sale of certain lease-hold property, that whereas one Norman Cutter was then asserting title to a portion of the property and had threatened to sue for the possession of the same, four of the notes given for the purchase money should be placed in the hands of a third person as a security to indemnify the purchasers against the claim of the said Cutter, or those who claim under him, or *any other claimant*. It was held that the addition of the words, "or any other claimant," did not enlarge the meaning of the instrument so as to make the security extend to another claim which exisisted in favor of a stranger to Cutter's title against the property.

In *Grumley v. Webb*, 44 Mo. 444, a receipt was given by the plaintiff in which he acknowledged the sum of $6,500 of the defendant, and it was expressed therein that this sum was in full satisfaction of a certain judgment against the defendant, and that said sum was in full satisfaction of all claims and demands that he had or held against the defendant up to the date of the receipt. It was held by this court that the receipt did not extend to any other claim or demand, except the judgment; and the English cases are all cited and approved. In this contract the shares of stock to be transferred to the defendant was clearly and definitely described in the preamble as the shares originally subscribed, one thousand in number. They are designated as being represented by the principal sums of the bonds deposited with the railroad company, fifty-three of which have been fully paid, and forty-seven of which remained in the hands of the company to be cancelled. The fifty-three bonds are described as equal to five hundred and thirty shares of stock, paid up in full, and the forty-seven bonds to four hundred and seventy shares, liable to cancellation. In the granting clause of the instrument, these shares are again described with the same clearness and precision, and are transferred to the defendant with the direction that the five hundred and

thirty shares paid in full shall be separately transferred to him on the books of the company, and that the four hundred and seventy shares shall be disposed of in any manner which shall be agreed upon by the defendant and the railroad company, and the defendant is constituted the agent of the county court for the evident purpose of releasing and annulling these shares; if it should be required by the company as pre-requisite to the surrender of the bonds. In the additional language for the extension of time and renewal of this contract, the amount of stock which had been fully paid is again described and enumerated as five hundred and thirty shares. Apart from the general clause at the conclusion, there is nothing in the instrument which indicates an intention to enlarge the subject matter. The justice of the county court, who presided in this transaction, together with an able attorney employed with reference to this particular subject, had reported to the court that the charter of the Pacific Railroad Company prohibited the issue of stock for interest paid on these bonds. If the mind is divested of a knowledge of the fact that the county was entitled to stock for such interest, the slightest doubt but that the five hundred and thirty shares alone were intended to be transferred by this instrument, as paid in full, could not exist.

It is unusual for a tribunal whose office it is to protect the public interest to dispose of valuable property by vague and indefinite expressions. The addition of a single line, or change in the phraseology of a single sentence, would have been sufficient to include the interest stock with definite and unequivocal certainty, if the intention to transfer it had existed. The county had made a subsequent subscription for five hundred shares of the stock of the Pacific Railroad Company, which is reported by George S. Grover to have been fully paid. If the county was the owner of these shares at the time this contract was made, or if any attempted transfer of

them had afterwards proved to be a nullity, would any one have the hardihood to contend that this stock also passed to the defendant by the general and indefinite clause of this contract? Yet, if the unlimited force of the words is made to control the other portions of the writing, regardless of the context, it is sufficiently broad to embrace it. But it is the intention of the parties, deduced from the language of the whole instrument, that must govern the meaning of any indefinite expression. The intention that either party may have entertained, but failed to express in accordance with the legal construction of the context, is not in issue. 2 Whar. on Ev., secs. 936, 937; *Smith v. Williams*, 1 Murphy 430; *Koehring v. Muemminghoff*, 61 Mo. 403. The words of this contract, which is *inter partes*, must be considered as used by each party, and the statement contained in it that no interest had been paid on thirty-four of the forty-seven bonds is equivalent to the affirmation of both parties that the county owned no stock by reason of interest paid on them, and that none was intended to be purchased or sold. The statement that the interest had been paid on the remaining thirteen of these bonds to July 1, 1857, and that no interest had been paid on them since the year 1859, discloses the fact that the county court was in doubt as to the exact amount paid, and did not regard it as material to the transaction. It is, therefore, inconsistent with an intention to transfer the stock to which the county was entitled by virtue of the payment of interest on them. For the stock was being sold at seventy-seven cents on the dollar, and if such an intention had existed it was important to have clearly ascertained the exact amount of property to be sold in order to fix the price, and a failure to do so would have been a wilful disregard of official duty, which will not be presumed. This is evident, also, from the inability of the court to state with certainty the amount apparently remaining due upon the bonds, which might have been

ascertained with facility, if the payments of interest had been known, and the estimate that this amount was "about $88,500," must have been based upon the theory that a very inconsiderable amount of interest had been paid, as the amount remaining due at that time, if no interest had been paid, would have been $88,924.23.

The statement that "the county of Johnson sold five hundred and thirty shares of stock to said Ridings as fully paid up," which occurs in the modification, is the interpretation given by the parties themselves to the terms of the original contract, and excludes the idea that the court regarded any shares of stock as fully paid other than those described. *Expressio unius est exclusio alterius.* It is not credible that a person of ordinary intelligence, who desired to dispose of $8,225 of the stock of the Pacific Railroad Company would select all these expressions, which are fatal to the right of property, as appropriate terms by which the same should be transferred. And it is not probable that a purchaser of ordinary shrewdness would accept an instrument which contains such terms as a muniment of title. They clearly establish the fact that at the time of making the original contract, the parties believed that no considerable amount of interest had been paid on these bonds, and that the county was not entitled to receive stock for interest paid on them, and did not intend to make any agreement in regard to it; and the rehearsal of the original contract in the modification, which contains no correction, as to the truth of these statements, but in it the shares fully paid are again enumerated as five hundred and thirty, shows clearly that this intention had not been changed. The indefinite language of the general clause must, therefore, be controlled and limited by the particular description of the shares of stock contained in the instrument, and cannot be construed to enlarge its effect.

At the trial of this cause, the legal construction of

this contract was made to yield to the supposed effect of oral evidence of the intention of the county court. In cases of latent ambiguity in ordinary contracts such evidence is admitted to apply the words of the instrument to the person or thing intended. A latent ambiguity in respect to the property to be affected occurs in a dispositive writing when the language employed in the whole instrument does not serve to identify the thing to be transferred, but extrinsic evidence discloses the existence of two or more objects to which the whole description contained in the writing is *equally* applicable. But, where the legal construction of an instrument gives it a certain and definite meaning and effect, by which the property to be transferred is clearly ascertained and identified, its descriptive terms cannot be equally applicable to other property, and the instrument cannot be said to be ambiguous. Where the words are plain and free from ambiguity, oral evidence of the intention of the parties has been universally excluded. Declarations of intention constitute a part of the *colloquium* or previous conversation of the parties and can be entitled to no greater weight than stipulations previously agreed upon, but not inserted in the writing, and, therefore, presumed to have been abandoned. *Bunce v. Beck*, 43 Mo. 266 ; *State v. Lefaivre*, 53 Mo. 470 ; *Swick v. Sears*, 1 Hill 17 ; *Mackey v. Story*, 3 Otto 589 ; *Bailey v. Railroad Co.*, 17 Wall. 96; *The Delaware*, 14 Wall. 579 ; *Greery v. Holly*, 14 Wend. 26 ; *Cook v. Shearman*, 103 Mass. 21 ; *Specht v. Howard*, 16 Wall. 564; *Bigelow v. Collamore*, 5 Cush. 226 ; *Gould v. Norfolk Lead Co.*, 9 Cush. 338.

But the rule is more rigorously enforced when the contract derives its existence from the proceedings of a statutory court, the record of which can be proved only by inspection. A county is not a corporation in the strict and proper sense of the term, but a political subdivision of the state, and holds its property in subordination and under the control of the legislature. *Barton*

*County v. Walser*, 47 Mo. 189. In *Reardon v. St. Louis county*, 36 Mo. 555, this court said : "The county court derives its powers from the legislature. It is not the general agent or representative of the county ; it is a part of the state government, with specific powers, duties, and functions, local to the county, but derived from the state, and not from the county, and subject to be altered or changed at the will of the legislature, without regard to the will of the county. It acts independently of the county in obedience to state laws. Duties imposed upon the county court by the legislature it performs as acts of obedience to the legislature, directly as a state functionary and not as an agent for the county. It is true it can bind the county in some contracts, subject it to some legal obligations, and appropriate its money to certain objects, but these powers it exercises by virtue of the authority derived from the state government and in obedience to state laws." In *Maupin v. Franklin County*, 67 Mo. 327, it is said : "A county court, like any other court of record, can only speak by its record, and the statute (1 Wag. Stat., 419, sec. 5), expressly requires that such courts keep ' just and faithful records of their proceedings.' The obviously correct principle that parol evidence is inadmissible to prove a contract with the county court was announced at an early date in this state, * * * and it certainly seems that the proper, and if we give heed to the statute and the earlier decisions, * * * the only course to pursue is in every instance to let the record speak the only utterances of the court entitled to recognition. It has often been held by this court in accordance with this view that when a contract has been made with a county court, the record of that court was the only legitimate evidence adducible in support of the contract." In *Reppy v. Jefferson County*, 47 Mo. 66, this court says : " It would be absurd to permit the contracts or other actions of the county court regularly entered upon the record to be controlled

in after years, and in collateral proceedings by the failing recollections of its judges."

It is evident from these cases that in the sale of property, the county court acts, not as the agent of the county in the legal or technical sense of that term, but as a functionary of the state government, and its powers must be strictly construed. If the intention to dispose of the property of the county does not clearly appear, when the proceeding is viewed in the light of all the surrounding circumstances, the title of the county cannot be divested by oral evidence of the intention of the judges *dehors* the record. That portion of the deposition of Thornton, in which he states that, "Ridings purchased all the interest the county had, and all the stock to which the county was entitled in the Pacific Railroad, and that he understood that the county at the time sold all the interest she had or claimed in the Pacific Railroad," should have been excluded. It was nothing more than an opinion as to the legal effect of the instrument, which it was the duty of the court to construe. And the statement of G. W. Houts, that, "when we made the May contract we were intending to sell all the stock," etc., is equally objectionable. His conclusion in respect to the intention of the other two justices, which, if coinciding, were paramount to his own, must have been based upon their declarations of intention. These declarations may have been made after the transaction, or his conclusion may have been unwarranted. The statement which the contract contains, that no interest had been paid on thirty-four of the forty-seven bonds, is fully equivalent to the assertion that the parties had no knowledge of the payment of this interest, and oral evidence for the purpose of showing that this fact was known to the county court was in contradiction of the terms of the contract and should have been excluded. The orders of the county court adduced in evidence, and the report of G. S. Grover, even though their contents had been known to the

court, were not alone sufficient to have imparted the information.

That the agreement of August 12, 1870, was not an abandonment of the original contract, and a second and independent sale of the property, referring to the former contract for its terms, is abundantly evident. A modification is not an abandonment. The abandonment of the original contract as void, would have vested the title of the $3,000, paid by the defendant, in the county. Yet this identical sum is again designated as the forfeit of the defendant for the non-performance of his new agreement. It was not in the power of the county court to dispose of this property as a gift or gratuity, even by a contract under seal. *State v. Cooper County Court*, 17 Mo. 507. The power conferred is to sell. 1 Wag. Stat. 441, sec. 9. The power to manage and control does not include the power to sell or dispose of anything, except perishable property, and the power to sell does not confer the power to exchange or barter. Story on Agency, 71, 78. *Saline County v. Wilson*, 61 Mo. 237. A sale is the transfer of property for *money*. 1 Benj. on Sales, 2, 85. Idle fears of danger do not constitute a consideration. *Ridings v. Hall*, 48 Mo. 100 ; *Cabot v. Haskins*, 3 Pick. 83. The provision in the original contract, that A. W. Ridings should defend the suits which might be instituted against the county in respect to the title to the shares of stock sold, is not a consideration, but a mere stipulation that the county should not warrant the title. Otherwise it would be a delegation of the power to manage and control the affairs of the county, which would be unlawful. The surrender of the forty-seven bonds was assured in law, and it was the duty of the circuit attorney to enforce the cancellation of them against the Pacific Railroad Company. Hence, the only consideration for the sale of the stock which can be regarded as legitimate was the pecuniary price of $3,000, for though a seal imports a consideration, no presumption arises that there was a different consideration from

that which is ascertained by the instrument itself. In the agreement of August 12, 1870, there is no new consideration. The interest accruing on the amount which was due by the terms of the original contract is exactly set-off against the interest to be released on the warrants of the defendant. The county derived no additional benefit from the arrangement. The value of the five hundred and thirty shares of stock on August 12, 1870, was $37,100.

The theory that the original contract was abandoned and a new sale made, in which the interest stock was included, involves the idea that the county court not only diminished the price of the stock previously sold by the sum of $3,000, to which the county was entitled as damages, but increased the amount of the acquisition by additional property of the value of $8,225, thus annexing a reward of $18,325 to the failure of the defendant to perform his contract. For a conclusion so anomalous, we are surely entitled to demand the support of the most unequivocal declarations of intention. If such a wanton betrayal of the public trust was in the power of the county court, it would still be proper to demand that the utmost precision and clearness of language should be used in its record to set forth an intention to accomplish a thing so monstrous. But the language employed fully acquits that tribunal of an intention so unjust to the interests of the people. The contract of August 12, 1870, must, therefore, be held to be a proceeding in confirmation of the original contract by which the county court, though possessing the power to treat it as void, elected to abide by its terms waiving the time of performance. By making the declaration of law, which was asked by the defendant, and refusing the first, second, and fourth declarations, which were solicited on the part of the plaintiff, the court below manifested an erroneous construction of this contract, and a misconception of the rules of evidence which were applicable to this case, and

for these errors the judgment should be reversed and the cause remanded. Henry, C. J., Ray and Sherwood, JJ., and Geo. A. Madill, Special Judge, concur.