# CHARLESTON.

## SOUTH PENN OIL COMPANY *v.* KNOX *et al.*

### Submitted June 6, 1910.   Decided December 6, 1910.

1.  BOUNDARIES—*Description—Undefined References to Adjoiners—Limitations by Calls for Monuments, Courses and Distances.*

    In a lease for oil and gas producing purposes, general location and description of the land by undefined references to adjoiners will be limited and controlled by particular calls for monuments, courses, and distances contained in a deed especially mentioned and pointed out in the description as one by which the same land was conveyed.

2.  SAME—*Description—Particular Description Prevailing Over General One.*

    As a general rule, a particular description prevails over a general one, and limits the application of the latter. That which is the more certain is entitled to the greater efficacy.

3.  CONTRACTS—*Construction.*

    In the interpretation of instruments, force and effect must be given, if possible, to all the words employed. A part cannot be disregarded, unless other terms used are so·specific, clear, and convincing in contrary meaning as to prove it to be a false demonstration.

4.  BOUNDARIES—*Description—Statement of Quantity.*

    A statement of quantity is never allowed to control defined and reliable calls by monuments, courses and distances. All other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to quantity.

5.  SAME—*Oil and Gas Leases—Construction—Premises Conveyed.*

    When an oil and gas lease is clear and unambiguous in its terms, the usual clauses providing against drilling near to buildings and for free gas in a dwelling, not asserting that such buildings are actually on the land leased, cannot tend to the overthrow and total disregard of the particular description of the premises adopted by the parties, though there are no buildings on the land embraced by that particular description and a dwelling and other buildings are on adjacent land to which the more general description alone might extend.

    BRANNON, JUDGE, Absent.

Appeal from Circuit Court, Harrison County.

Bill by the South Penn Oil Company against John M. Knox and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

*A. B. Fleming, Charles Powell,* and *Kemble White,* for appellant.

*Edward G. Smith, J. M. Foster,* and *Thomas I. Cummings,* for appellees.

ROBINSON, PRESIDENT:

The South Penn Oil Company, in 1904, leased land for oil and gas producing purposes from Sarah A. Martin and husband. In the lease the land is described as follows: "All that certain tract of land situate in Clay District, Harrison County and State of W. Va., on the waters of Coons Run bounded substantially as follows:

On the north by lands of M. A. Whiteman;

On the east by lands of Jno. S. Whiteman & others;

On the south by lands of Steven Vincent & Do;

On the west by lands of Do Do & Do

Containing Thirty Three (33) acres, more or less, and being the same land conveyed to the first parties by Jacob B. Whiteman by deed, bearing the date of 28th day of October; 1895, recorded in Deed Book 96 page 279, reserving, however, therefrom 300 feet around the buildings on which no well shall be drilled by either party, except by mutual consent."

The deed from Whiteman, to which this description refers, conveyed by specific metes and bounds a tract of $30\frac{2}{3}$ acres. Besides that tract, Sarah A. Martin owned some small lots which had been conveyed to her by other deeds. These lots were contiguous to the tract of $30\frac{2}{3}$ acres. They lay so as to be in one corner of the whole tract when taken together. When the lease was made, these lots were occupied by the lessors as a part of a farm composed of the several parcels. The dwelling house and barn were on these small lots which had been conveyed by deeds other than the one referred to in the lease. The whole body of land including the lots, containing 31 acres and 150 square poles, could be viewed as bounded "on the south by

the lands of Steven Vincent and others," and "on the west by
the lands of Steven Vincent and others;" or, the land without
the lots in the corner of the whole, that is, the tract conveyed
by the Whiteman deed and containing 30⅔ acres, could also be
viewed as bounded on the south and west by the lands of Steven
Vincent and others.   When the land was viewed with the lots
excluded, these lots also made a southern and a western boundary
for the Whiteman tract that remained.   By so viewing them,
however, the adjoining line of one of the "others" on the south
was shortened, and the adjoining line of Vincent on the west
was reduced to one of small distance.

Rentals were regularly paid on the lease pursuant to its terms.
It remains in full force.   In 1909, Sarah A. Martin and
husband made an oil and gas lease to Knox and others covering
the small lots.   Thereupon the South Penn Oil Company brought
this suit to remove the later lease as a cloud on the title under
its lease, and to enjoin threatened interference, by oil and gas
development on the lots, with the possession which that com-
pany alleged it had of the whole body of land for oil and gas
producing purposes.   On a final hearing of the cause, the pre-
liminary injunction theretofore awarded was wholly dissolved
and the bill dismissed.   Some interlocutory proceedings were
had, but our view of the case makes it unnecessary to consider
them.   The appeal presents but one pertinent question:   Were
the small lots embraced in the land described in the first lease?

It is submitted that an intention is shown to include in the
South Penn lease the small lots.   If this is true it must appear
from an interpretation of the lease itself.   If the terms of the
lease are conflicting or ambiguous, we may be aided in giving
construction by the testimony showing the situation and sur-
roundings of the parties at the time the lease was executed.
But we cannot look to the testimony of oral declarations of the
parties made prior to the execution of the lease.   The paper
itself must be taken as embodying the final agreement of the
parties.   And we must be guided by established rules of con-
struction.   We dare not guess or conjecture.   "The great object
of construction is to collect from the terms or language of the
instrument, the manner and extent to which the parties intended
to be bound.   To facilitate this, the law has devised certain
rules, which are not merely conventional, but are the canons

by which all writings are to be construed, and the meaning
and intention of men to be ascertained. These rules are to be
applied with consistency and uniformity. They constitute a
part of the common law and the application of them, in the
interpretation and construction of dispositive writings, are not
discretionary with courts of justice, but an imperative duty.
If it were otherwise, no lawyer would be safe in advising upon
the construction of a written instrument, nor any party in
taking under it." *County of Johnson* v. *Wood,* 84 Mo. 509.
Of course the true intention of the parties must be sought.
That is the real object of construction. And the intention is
to be gathered from the instrument as a whole. *Uhl* v. *Railroad
Co.,* 51 W. Va. 106; and other cases.

The lease is clear in its language. The description of the
land to be covered by the lease is plain. That part of the
description which locates the land by reference to adjoining
owners, by its own terms, does not purport to be specific. It
only purports to bound the land "substantially," not *certainly.*
"Substantially," as used here, can mean no more than *about,*
or *in the main.* It does not mean *wholly,* or *completely.* Then,
the very terms used in naming the adjoining owners show that
completeness and particularity was not intended by that part
of the description. The use of the word "others" is not com-
plete, certain, or definite. It does not name the "others." Nor
does such description state the exact courses or distances of the
lines which adjoin other lands. It merely puts the land down
by other owners. It merely says on what side of some other
undescribed land the tract may be found. It does not say from
what point, how far, or in what direction a line runs with such
other land. Altogether, that part of the description is no more
than a general one—a description stating the location of the
land, but not particularly describing it. But that which follows
is certain and particular. It expressly points to a deed, its date,
its place of recordation, and says that the land to be covered
by the lease is *the same land* which was conveyed by that deed.
It makes the description in the deed a particular description
of the land intended to be leased. The deed becomes a part of
the lease for the purpose of describing the land. The descrip-
tion in the deed has the same effect as if actually incorporated
in the lease. Martindale on Conveyancing, section 108. Look-

ing then to the deed, we find a definite and specific description of the land by monuments, established corners, magnetic courses, and stated distances. The lease says this is the same land intended to be embraced by it—the identical tract. So, in the lease under consideration, we observe a general description followed by a distinctly particular one.

As a general rule, a particular description prevails over a general description and limits the application of the latter. Tiedeman on Real Property, section 82. This rule applies here. The more general description of the land mentioned in the lease is limited by the particular description which follows it. The general location of the land by references to adjoining land owners is limited and defined by the calls given in the deed. First, the land is generally pointed out; then, it is particularly pointed out as the identical land which was conveyed by the deed mentioned. The latter must prevail because it affords a more particular description, unless there is something else in the lease which plainly shows an intention contrary to that which the use of this particular description discloses. Even if there were irreconcilable repugnance between the parts of the description, the calls for adjoiners must yield to the calls for monuments in the deed to which the lease makes reference. *Matheny* v. *Allen,* 63 W. Va. 443.

We have said that the exact lines of the tract cannot be known from the general description by adjoiners. Let us illustrate by referring to the southern boundary. The words used are: "On the south by lands of Steven Vincent and others." What others? From what point, how far, and in what direction with them? It does not say. If we accept this description by adjoiners as referring only to the 30⅔ acre tract, the small lots are to the south and west, and are owned by others than Steven Vincent, namely, the lessors. Or, if we accept it as referring to the entire body of land, Vincent and others are on the south and west. So we see this general description is not explicit. Using it, we may or may not take in the small lots. That description does not state whether there is one or more lines on the south, nor does it define the extent and direction of any southern boundary line. And the same fact is true as to the western boundary. As to it the description reads: "On the west by lands of Steven Vincent and others." It would seem that this

language means to include Vincent and all others on the west. Can it mean only Vincent and others than the lessors? The small lots are on the west of the 30⅔ acre tract. How do we know that the owners of these lots were not intended to be meant among the "others" that are on the west? Shall we include the lots or not when we use this general description? We can include them and the combined area will be bounded on the west by lands of Steven Vincent and others. But we can exclude them and the remaining 30⅔ acre tract will still so be bounded. Now, how are we to determine what the description means by these general references to the southern and western boundaries? What other guide does the lease itself furnish? Other words have been used. They expressly say that the only land to be included is *the same land* which was conveyed by the deed especially mentioned.

Effect must be given to the clause of the description which refers to the recorded deed, unless other parts of the lease are so specific, clear, and certain as to show that clause to be erroneous. It must be shown to be a false demonstration before it can be disregarded. The words of the clause must be taken to mean what they say, unless the remaining parts of the writing are so plainly and certainly to the contrary as to exclude safely that which those words mean. But as we have shown, the remaining description, when the clause referring to the deed is ignored, is not explicit and sure. It may *include* or *exclude* the small lots. So the clause is of particular use. It harmonizes with one meaning of the more general description. It goes with the more general description acceptably. It cannot be thrown out as erroneous, because the other does not so brand it. It is indeed of necessary use to make certain that which the other left uncertain.

In the interpretation of instruments, it is a familiar principle that force and effect must be given, if possible, to every word employed. *Uhl* v. *Railroad Co., supra.* How can we, in the face of this rule, annihilate the words which give a particular and sure description by reference to the deed? Yet, the appellant would have us wholly discard these words as false and erroneous. Now, these words must be given force and effect, if that can be done. Is it possible to do so? We have shown that they do not necessarily conflict with the other description

used in the lease. A meaning can be given the general description ,which fits this particular description. And that can be done without violence to the words used. The two parts of the description can readily be made consistent, so as to exclude no part of either. The two taken together are not necessarily ambiguous. Why should we make them so? We cannot under the rule. We must harmonize them so as to use both, since that can readily and sensibly be done. The two will read together. And when they are read together, and force is given to all the parts of the description, an intention to exclude the small lots is plainly expressed.

It is argued that the lease calls for 33 acres, and that, therefore, the 30⅔ acre tract alone could not have been intended. But, after using the words "containing 33 acres, more or less", the lease expressly and particularly, by making the deed a part of itself, says that the tract contains only 30⅔ acres. The lease, thus, immediately defines its general statement by a more precise one that states how much less than 33 acres the tract contains— by a statement that the area is 30⅔ acres, specifying exact metes and bounds which prove it. Which of the statements is the more reliable and certain? Is it not the latter one? Must not the particular here again outweigh the general? By the reference to the deed, the acreage is capable of being ascertained by monuments and boundaries. The land may be measured by the particular calls of the deed. Quantity is never allowed to control defined calls by monuments, courses, and distances. It is the least certain and material part of description. It must yield to boundaries when they are as plainly given as in the present case by reference to a deed which contains them, in detail. All other elements of description must lose their superior value through ambiguities and uncertainties before resort can be had to quantity. It is needless to cite authority for these well known principles. The superior elements of description in this lease are not ambiguous and uncertain, and the general reference to the quantity cannot be a controlling factor.

But it is insisted that the lease mentions "buildings" and "one dwelling house on said land;" and that, since there are no buildings on the Whiteman tract, the lease means to include the lots on which the buildings are situated. The lease does not directly assert that buildings are actually on the land leased.

It does not describe the land intended to be leased by a statement that it is the same land on which there are certain buildings. Is mere implication to control the particular and definite description of the land which the lease contains? The usual reservation in regard to drilling was made "around the building." But the printed blank which was used in making the lease contained all the words of reservation except the number of feet, which was written in. The circumstance that these words were retained and used is not controlling against that which the parties had already recited as particular description. The following clause was written into the latter part of the lease: "Lessors may have free gas for heat and light in one dwelling house on said land from any gas well thereon, subject to rules and regulations of said Company at such time." Does this clause assert that "one dwelling house" is actually on the land? May it not as well mean to provide for free gas in any one dwelling house that may be built on the land? It does not say *the* dwelling house on said land. It says "one." If that clause implies an existing dwelling, why may it not as well imply that there is more than one? But these references to buildings were not intended for description. The lease shows them to be for other purposes. The parties did not give them consideration for the purpose of describing the land. The references to buildings were not in the minds of the parties as descriptive of the land. The parties did not carefully scrutinize the references in that light. Therefore, the mention of buildings cannot have such weight for description as to overthrow any part of that to which the parties directed their minds and on which they agreed as particular description of the land. That which is particular and directed to the point is surely worthy of prevailing influence over that which is general and relative to other subjects. If one must reject the other, the specific description of the land must prove the references to the buildings to be false. But these references, in construing the lease so as to preserve all its parts, may well be taken to mean buildings to the usual number and of the ordinary character that may be reasonably necessary at any time for the enjoyment of the 30⅔ acre tract as a farm.

There is no convincing evidence in the case that the lessors gave a contemporaneous or practical construction of the lease

which charges them with a recognition that it was intended to include the lots. The intention which the lease itself discloses, through a construction that makes the certain to control that which is inferior in certainty, has not been overthrown by any contrary recognition of the lessors. Nor is that intention contradicted by the situation and surroundings of the parties at the time of the execution of the lease. If the lease was intended to embrace the lots, the lessors have not legally so bound themselves, either by the paper itself or in any other way.

The decree is a proper one in the premises. It will be affirmed.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting)*:

As, in my opinion, the lease has been so construed by my associates as to partially defeat the evident purposes of the parties thereto, without necessity therefor, found in the principles applicable to the interpretation and construction of deeds and contracts, I am compelled to dissent from the decision.

I find no fault with the legal proposition, giving control to a particular description over a general one, nor with the rule which denies controlling effect to a specification of quantity over calls for monuments, courses and distances. But certain other propositions are stated in the opinion of the majority which do not seem to be sustained by the authorities. One of these, namely, that a reference in one deed to another always incorporates it therein for purposes of description, and makes it controlling, seems to have been made the decisive test. Such a reference is not always made for descriptive purposes, and is not always controlling in its effect, when it has been made for that purpose. It is only one element to be considered among others and may yield under the rule, requiring effect to be given to the instrument according to the intent of the parties as gathered from all of its parts.

The reference to the deed in this lease is preceded by a clause, inserted for the express purpose of describing the land. The lease does not say this reference is for the purpose of a more particular description of the premises or for any description at all. Nor is it coupled with any expression of intent that

the land described in that deed should be the only land included in the lease. It seems to me, therefore, that what has been treated as the general description in the discussion of this lease, namely, the description by boundaries, may well be considered the particular description. It is the language in the lease that has been made expressly descriptive. The purpose of the other, the reference to the Whiteman deed, is not stated. It may have been put in for description and it may not. It could perform a wholly different function,—indication of the source of title. If we give it one function, we comply with the rule requiring effect to be given to every word in the instrument. We are not bound to give it the broadest and most extensive effect, indicated by its terms. One reasonable office is enough. *White* v. *Bailey,* 65 W. Va. 573. I do not mean to say the words, "being the same land", could not be regarded as descriptive; but I do assert that they were not necessarily used in that sense, or for the purpose of describing the land.

Taking that portion of the deed which has been expressly made descriptive and reading it in the light of the evident purpose of the parties, a lease of the lessor's lands for oil and gas operations, giving to the lessor the exclusive right to operate thereon for such purposes, references found in other portions thereof to the condition of the property at the time, and specification of the quantity of land, every doubt as to the general intent to include the lots on which the buildings stood, logically and necessarily disappears. Gas and oil wells drilled on these lots in the corner of the farm would necessarily drain the oil and gas from portions of the land, admittedly covered by the lease. The lessee could never have intended any such result, nor could we reasonably impute to the lessor secret intent thus to withhold a part of what there was plain intent on the part of the lessee to obtain. There are two references in the lease to buildings. One clause provides that no well should be drilled within 300 feet of the buildings. The other secures to the lessor free gas for light and heat in "one dwelling house on said land from any gas well thereon." All the buildings owned by the lessor, except a pig sty, were on the lots. To say this reservation was made for the benefit or protection of a pig pen would be ridiculous. It was made for the protection of buildings, such as barns and dwelling houses, substantial structures. All of

these were on the lots. It cannot be reasonably supposed that the grantor did not intend to protect the house in which she resided. Her construction of this lease would permit the lessee to drill wells within a few feet of the house in which she lived. If the buildings referred to were not on the leased premises, they are not protected by this reservation. If they were not on the leased premises, then there were none such to be protected. The suggestion that this clause may have been inserted for the protection of buildings that might be constructed afterwards, is, in my opinion, wholly unwarranted by any authority, and the insertion of this clause answered no purpose. A rule of interpretation, requiring effect to be given to every clause, when it is possible to do so, would be thus violated. All recitals and references in a deed, in any way descriptive of the property, are always read, interpreted and construed in the light of the state and condition of the property as it was at the time, unless some other time is expressly referred to. Martindale Convey., section 91; *Barbour et als v. Tompkins,* 58 W.'Va. 572. To assume, in the absence of any terms indicating it, that this clause refers to buildings subsequently to be erected, is plainly violative of this principle. The same is true of the other clause, securing to the lessor gas for use in one dwelling house on said land. What land? "Said land." Could this mean anything other than the land covered by the lease? This line of argument is supplemented by the specification of the quantity of land leased, in the descriptive term "containing". This word is not capable of any significance other than description. Like the specification of adjoining lands, it is expressly descriptive.

The purpose of description is to afford means of identification of the subject of the grant with a reasonable degree of certainty. I know of no rule that demands such a description as will preclude every possibility of either inclusion or exclusion. What passes by a grant is a question of intent, to be derived from the manifest purposes of the instrument and the descriptive terms. There is no rule requiring accuracy of description to the limit of possibility, or designation of every possible element thereof. It suffices to describe the land substantially, and I perceive no reason or force in the view that the word "substantially" shall be taken to mean that the description in which it is used shall be regarded as a general and not a particular

one, in the sense of the decisions marking the distinction.
"Substantial" means in a substantial manner, embracing all
that is essential. *Insurance Co.* v. *Altheimer,* 25 S. W. 1067;
*Cheeseman* v. *Hart,* 42 Fed. Rep. 98, 99; *Edgerton* v. *State,*
70 S. W. 90, 91; *Lineberger* v. *Kidwell,* 104 N. C. 506; *Com-
monwealth* v. *Wentworth,* 118 Mass. 441-42. It seems to me
the use of this word argues exactly the opposite of that which
is predicated of it in the majority opinion. It signifies state-
ments of all that is necessary to enable the lessee to identify
the land. It is also used in a part of the lease that purports
to be a description and could not have been intended to per-
form any other function; while the reference to the deed may
have been intended to perform an entirely different one, as I
have stated.

Admitting that the main functions of the two clauses, relating
to buildings, were not descriptive, and that the minds of the
parties were not directed particularly to the matter of descrip-
tion, when they were inserted, I think it nevertheless remains
that, under the general principle I have stated, these clauses
must be regarded, in so far as they relate to the condition of
the property, as defining its condition at that time, and thus
indicating what the terms of the demise and the description
mean. The form in which the parties expressed themselves in
these clauses assumes the existence of buildings then on the
land. Why was that form adopted? The logical answer is,
because they asserted the then condition of the property. It
had buildings on it. We may reasonably and logically assume
that, if these clauses were intended to relate to buildings there-
after to be erected, a different form or mode of expression would
have been adopted, indicating the fact; for men seldom speak
of things yet to be, as if they were existent.

It is admitted that the description by adjacent lands is capable
of a construction that will place the lots at the southwest corner
within the lease. As that description will bear such construc-
tion, and other portions of the lease, by their references, show
assumptions in harmony therewith, and such construction is
necessary to prevent results, absurd and variant from the gen-
eral purposes of the parties, disclosed by the instrument itself,
read in the light of the actual state of the property, both the
legal necessity and propriety of adopting it are plainly manifest.

The mere reference to a former deed, after having set forth a description by metes and bounds or otherwise, without indicating or stipulating the purpose of such reference, as that it was made for a more particular description, or that it was the intent of the grantor to convey only such land as he held under the deed referred to, is not generally regarded as having been made for the purpose of description. If no other description has been given, then of course it is regarded as having been incorporated in the deed for that purpose, under the principle, that a deed shall be so construed, if possible, as to give it effect. But, if there is another description, followed by a mere reference to a former deed, saying the land described is the same that was conveyed to a grantor by it, the prior description is regarded as the real or particular one. Its embodiment in the deed shows affirmative intent to make it essential and real, and negatives the existence of intent to rely upon the deed referred to for description. "If, instead of containing the description of the land conveyed, the deed refers to other deeds, the description of the latter deed will by such reference become a part of the former, and has the same effect as if it had been inserted in the subsequent deed. * * * But the reference to another deed will not be permitted to control the description actually contained in the subsequent deed, so as to exclude a lot or parcel of land described as a part of the subject of conveyance, and not mentioned in the deed referred to." Tied. Real Prop. & Conv. section 605. The text from Martindale on Conv. section 108, relied upon in the majority opinion for the position, that a deed referred to in a subsequent deed constitutes the particular description and is always controlling, was not intended by the author to express that view. The text is very general, including not only deeds, but maps and surveys. The author did not analyze and classify the cases in which the principle is involved. Most of the decisions cited to sustain the text involve references to maps and surveys, and concern town lots. They all say that a deed referred to is incorporated in the subsequent deed by the reference, but the text does not say the description in the adopted deed must be regarded as the particular description or as having controlling effect, nor do the decisions upon which the principle is asserted so hold. The text from Tiedeman, here quoted, goes beyond

the mere statement that a deed is incorporated by reference and deals with the value and force of the adopted. deed under various circumstances, respecting description. It says, if there is no other description in the subsequent deed, the adopted deed will be looked to for the description, and, as it is the only description available, of course it must be conclusive; but, if there is another description by metes and bounds or otherwise and then a reference to a prior deed, the description of such prior deed, although incorporated, is not regarded as the particular description, nor as being dominant and controlling in its force and effect. For the latter proposition the author does not cite many decisions, but he could have done so, .for the books abound with them. *Morrow* v. *Willard,* 30 Vt. 118; *Chaplin* v. *Srodes,* 7 Watts 410; *Smith* v. *Sweat,* 90 Me. 528; *Winn* v. *Cabot,* 18 Pick. 553; *Hathorn* v. *Hinds,* 69 Me. 326; *Lovejoy* v. *Lovett,* 124 Mass. 270; *Whiting* v. *Dewey,* 15 Pick. 428. These cases hold, not only that the description by metes and bounds is the particular description, but also that, if the lands intended to be conveyed are thereby indicated with reasonable certainty, the reference to a deed to the grantor, as covering the same land, will neither restrict nor enlarge the grant as defined by such particular description, in case · of a variance. Under such circumstances, the reference to the prior deed is deemed to have been inserted merely to indicate the source of title and not to describe the land. And this view has been adopted even in cases in which language has been employed in connection with the reference, professing, in express terms, to declare intent to convey the land acquired by the prior deed. In *Daniels* v. *Savings Institution,* 127 Mass. 534, a grant, particularly defined, was held not to have been impaired by a subsequent reference in the deed, to certain other deeds "for a full description of the said parcel of land, water rights and privileges intended to be conveyed," though the deed referred to did not cover all that was included in the grant. In *Brown* v. *Heard,* 85 Me. 294, the court held as follows: "A clause in a deed, at the end of a particular description of the premises by metes and bounds, 'meaning and intending to convey the same premises conveyed to me', (by a certain deed referred to), is held to be merely a help to trace the title and does not enlarge the grant." In these instances, the deeds, read as entireties, showed

clear intent to pass certain lands, as I think the lease in this case shows clear intent to demise certain lands, and the courts held that subsequent references to the deed of the grantor, for a more particular description, in the former case, and accompanied by an expression of intent to convey the premises acquired by the prior deed, in the latter, were subordinate in character, not purporting on their faces to deal directly and expressly with the matter of description, and must, therefore, be harmonized with the particular description by assigning to them a subordinate function. This, however, is not always done, for, in some instances, the particular description is uncertain and impossible of application, or does not harmonize with the general intent expressed in the deed. Then a subsequent clause, professing to sum up and express the real intention of the parties as to what shall pass by the deed, is allowed to control. *Plummer* v. *Gould,* 92 Mich. 1; *Flagg* v. *Bean,* 25 N. H. 49; *Boone* v. *Clarke,* 129 Ill. 466; *Strong* v. *Lynn,* 38 Minn. 315. In *Sawyer* v. *Kendall,* 10 Cush. 241, there was a description by metes and bounds, accompanied by a plat in a partition suit with which this description did not agree. There was also a reference to the grantor's deed. The court found it impossible to ascertain from the description by metes and bounds what land it was intended to convey, and allowed the reference to the grantor's title by partition to control. Notwithstanding this, the description by metes and bounds was designated the particular description and the other the general description; and the court said the rule, giving preference to the particular description, would have to be departed from on account of the uncertainty of the particuar description. The conclusion is expressed in these words: "It is not a case, therefore, of two inconsistent descriptions, in which the general must yield to the particular, but of an uncertain and impossible description, which must be controlled by an intelligible, though general description, given by a reference to the grantor's title by partition."

Assuming that the particular description, unaided by anything else disclosed by the lease, signifying intent and purpose, respecting the subject matter thereof, would be susceptible of two constructions and therefore ambiguous, as to the western and southern boundaries, this ambiguity is removed by the

assumption found in the two clauses relating to buildings, agreeing perfectly with the state of the property at the time the lease was made, and the specification of quantity.   Certainty of intent to include these lots within the lease, and to make the western and southern boundary monuments the lands of Vincent and others, such others not to include the grantor, is thus disclosed by the terms of the deed, as well as by the evident purposes of the lessor in executing this lease and the lessee in accepting it.   Thus the particular description is made equally as certain and definite respecting the matter of boundaries, as what may be called the general description, the reference to the deed.   As the lessor put in a particular description and also the inconsistent reference to the deed, the crucial question is, which shall control.   The particular description having been rendered reasonably certain in the manner already stated, it may be said that this does not preclude the possibility of a different intent, in harmony with the subsequent reference; but I think it may be said, with a great deal more force, that it does not appear beyond the possibility of doubt that this subsequent reference was made for the purpose of description at all.   Hence, we have conflict in the lease, considered as an entirety.   How should this conflict in terms, respecting intent, be resolved?   So as to harmonize with the general purposes and intent of the parties to the instrument.   This is the import and declaration of the numerous authorities already cited.   It also accords with principles declared by this Court.   *Chapman* v. *Coal & Coke Co.*, 54 W. Va. 193; *Gibney* v. *Fitzsimmons,* 45 W. Va. 334; *Hurst* v. *Hurst,* 7 W. Va. 299.   Which construction does this?   Undoubtedly the description by metes and bounds or by adjacent lands, as I have already shown.   Did the lessor intend to secure protection to her buildings on the lots?   To say she did not would be to impute to her reckless improvidence or pitible stupidity.   Would the clause, inserted for protection of buildings, protect her residence and other buildings, not on the leased premises?   Certainly not.   Did the lessee intend to permit her to lease these lots to others and so expose the land within its lease to drainage?   This assumption would be most unreasonable.

Moreover, the evidence discloses conduct on the part of the lessor in harmony with the interpretation I give the lease.   She

leased this land in 1904. She set up no contention for exclusion of the lots, until 1909, five years later, nor until the value of the land as oil and gas territory had become apparent. Then she executed a lease on the small lots to Knox and others, at the same time taking indemnity against damages or liability which might flow from her execution of the prior lease to the South Penn Oil Company. Subsequent conduct is admissible on the question of construction, when the written words of a deed or lease, leave the intent of the parties in doubt. *Chapman v. Coal & Coke Co.,* 54 W. Va. 193; *Gibney v. Fitzsimmons,* 45 W. Va. 334; *Caperton's Admr. v. Caperton's Heirs,* 36 W. Va. 486.