# CHARLESTON

## McCoy v. Ash.

Submitted June 8, 1908.    Decided December 22, 1908.

EVIDENCE—*Parol Evidence—Written Contract—Admissibility.*

A court can consider no sort of parol evidence, such as the declaration of the parties before, at the time of, or after the execution of a contract in writing, nor can the court call in aid any kind of parol testimony to alter, explain or modify a written contract, if it is free from ambiguity on its face.    (p. 658.)

Error to Circuit Court, Tyler County.

Action by Isaac McCoy against William E. Ash. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

J. B. BLAIR and I. M. UNDERWOOD, for plaintiff in error.

ENGLE & RIGGLE and T. P. JACOBS, for defendant in error.

BRANNON, JUDGE:

William E. Ash owned a tract of land in Tyler county on which he resided. It was composed of, so far as derivation of title was concerned, two co-terminous tracts, but occupied by him as a unity.   They were leased for oil by separate leases. One tract called the "Home Farm" contained fifty and one eighth acres, the other tract called the "Gorrell Tract" contained two and one half or three acres.   Under the oil lease Ash was entitled to a royalty of one eighth of the oil. Ash and wife made an agreement, by which they sold and conveyed to Isaac McCoy "One-sixteenth of all the oil and gas underlying all of a certain tract or parcel of land in McElroy District in Tyler county, and bounded substantially as follows: On North by lands of Hoge Heirs; on East by lands of Emmeline & J. B. Gorrell; and South by lands of McMillan & Allen; on the West by lands of Peter Horner, and containing (52) Fifty-two acres, more or less."   Four oil wells were bored on this land producing oil, one of them on the small tract, called the "Gorrell Tract."   A dispute arose as to the right to one half the royalty; that is one sixteenth of the oil, coming from the well on the little Gorrell Tract.

For a time that royalty oil was divided between Ash and McCoy; but after awhile Ash disputed McCoy's right to share in the oil coming from that well, claiming that he had not included in the sale the royalty from that tract, but only in the oil from the Home Farm, and Ash afterwards received all the proceeds of the entire one eighth royalty in oil coming from that well. McCoy brought an action of *assumpsit* to recover from Ash his share of the money received by Ash for royalty from that well on the Gorrell Tract. Upon a demurrer to evidence by the plaintiff the court gave judgment for the plaintiff, and the defendant comes to this Court upon a writ of error.

Before reaching the merits of the case we must dispose of the demurrer to the declaration. Its theory is that the declaration in one of its counts declares upon the instrument as sealed by Ash and wife and McCoy; whereas when read on oyer it is found sealed only by Ash and wife, not by McCoy. The declaration does not say that McCoy *sealed* it. It simply says that Ash and wife "made and entered into an agreement in writing under seal with the plaintiff." That does not say that *McCoy* sealed it. A deed poll accepted by the grantee is an agreement, as the declaration construes it. Therefore, there was no variance between declaration and evidence. Moreover, the count is not on the writing, as for a breach of it, and hence the variance question is not material, the writing being used as inducement or explanation of how it came about that Ash got the money. The count closes for money had and received; it is only such a count. Another theory for the demurrer is, that the declaration does not aver actual delivery of the oil. That does not matter. Royalty oil is incapable of delivery in this sense. The deed gave right to it and if, as this count says, Ash sold and received pay for the plaintiff's oil, that is enough to sustain the action for money had and received.

Now as to the merits. The only question is, Did the agreement of sale cover the oil well on the Gorrell Tract? If it did, the plaintiff is entitled to recover, there being no controversy as to the fact that Ash did receive money for the whole of the one eighth royalty, and there being no dispute as to the amount of money which he received therefor. The

evidence shows that these two tracts of land were both owned by Ash and were contiguous and occupied as a whole by Ash. The evidence shows that those two tracts taken together constitute one body or tract and as a whole or unity are bounded "on the North by lands of Hoge Heirs; on the East by lands of Emmeline & J. B. Gorrell." Now, the lands of Gorrell so adjoin both these tracts on the east. The little tract of two and a half or three acres and the Home Farm. In other words, a line between the Gorrell lands and the Ash lands would take in both tracts. If it was intended to except the Gorrell Tract, why put in an eastern boundary that would include it? That line or boundary includes it just as much as it does the other tract. The agreement does not say "Bounded on the East by lands of Emmeline & J. B. Gorrell *and other lands of Ash*," but it says the tract is bounded by lands of Gorrell alone. It says the tract contains fifty-two acres. It takes both tracts to make that quantity mentioned in the deed. The evidence is plain that these parties were dealing for the sale of half of Ash's entire royalty. Where is any reason for the sale of half of the royalty in the Home Farm and the exception of the royalty in the little piece of Gorrell land? It does not look reasonable that McCoy would want to buy the royalty in the Home Farm only, or that Ash would want to reserve the royalty in the Gorrell tract. The thing is unlikely. Now, we say that the boundary in the agreement, not being by corners and magnetic calls, but by abutting tracts, the deed plainly takes in the Gorrell Tract. That is plain from the face of the deed. There is no ambiguity on its face; but notwithstanding this the defence introduced oral evidence to prove that the contract as understood by the parties was to except the Gorrell Tract, that such was the negotiation before the contract was reduced to writing, and such the conversation at the time it was made. But that evidence is inadmissible and without force in a court of law, because it is well established that where a writing is free of ambiguity it must speak for itself, and oral evidence of conversations, the interlocution between the parties, the talk between them, preliminary to or at the time of the execution of the writing, cannot be admitted to prove anything different from what the contract proves, to vary or contradict it. *Maupin* v. *Insurance Co.*,

53 W. Va. 557, citing *Crislip* v. *Cain*, 19 *Id.* 438, and *Knowlton* v. *Campbell*, 48 *Id.* 294. So *Martain* v. *Monongahela &c.*, 48 *Id.* 542. This contract takes in the Gorrell Tract if you can take in anything by a boundary of coterminous tracts; but the effort is by oral evidence to except the Gorrell Tract, and thus to vary, alter in fact, contradict, the written instrument in the teeth of the law above stated, much as the attempt to say that a note was not to be paid, as in *Duty* v. *Sprinkle*, 60 S. E. 882, though the note promised absolute payment, or like the effort to except from a deed conveying a tract of land a house thereon, as in the case of *Mahaffey* v. *Lumber Co.*, 61 W. Va. 572. But really, this deed being free of ambiguity, this oral evidence is wholly irrelevant. When a latent ambiguity in a writing appears oral evidence is admissible, for limited purposes, to show the subject matter and the surrounding circumstances. But there is no ambiguity in this instrument so as to allow any parol evidence to explain it, and the case has not arisen for the admission of oral evidence. *Armstrong* v. *Ross*, 61 W. Va. 38: *Trout* v. *Railway Co.*, 59 S. E. 394.

There is evidence of statements made by McCoy after the contract was made to the effect that he had not bought half the royalty in the Gorrell Tract. This is only oral evidence to contradict the writing—to disprove what it said. No matter that the evidence is an admission *afterwards* of what the writing did or does. It can no more be given than one before the writing. Both go to contradict it. The rule is: "A court can consider no sort of parol evidence, such as the declaration of the parties before, at the time of, or after the execution of a contract in writing, nor can the court call in aid any kind of parol testimony to alter, explain, or modify a written contract, if it is free from ambiguity on its face." *Martain* v. *Monongahela R. Co.*, 48 W. Va. 542. This admission does not prove a later contract founded on consideration modifying the written contract. That may be shown by oral evidence. 1 Elliott on Ev., section 581; 2 Jones on Ev. 447. The writing vesting in McCoy an estate, he could not destroy it by a mere word of mouth admission, having no consideration, that he did not own it. *Wade* v. *McDougle*, 59 W. Va. 114.

Ash for some time shared with McCoy the half of this con-

tested royalty, going far to show that the agreement included it.

We think the circuit court decided the case correctly, and therefore affirm its judgment.

*Affirmed.*