# CHARLESTON.

UNITED FUEL GAS COMPANY *v.* GODFREY L. CABOT *et al.*

Submitted April 22, 1924.    Decided April 29, 1924.

1. MINES AND MINERALS—*Rights of Lessee in Possession Under Valid Oil and Gas Lease as Against Lessee Under Subsequent Lease Stated.*

    A lessee in possession of and extracting gas from a tract of land under a valid oil and gas lease duly recorded may sue in equity to cancel and remove as a cloud on his title a later lease executed by his lessor claimed by the first lessee to be a portion of the same land, and to enjoin the taking of gas therefrom, and to require an accounting for gas, if any, extracted under the later lease. (p. 392).

2. SAME—*Particular Description in Lease by Reference to Deed Containing Metes, Bounds, Monuments and Distances Prevails Over General Description.*

    Generally a particular description of the land in an oil and gas lease by reference to a deed containing metes, bounds, monuments and distances will prevail over a general description as by adjoiners, and estimated acreage. (p. 394).

3. SAME—*All Elements of Description and Parts of Lease Considered in Ascertaining Intention.*

    But all elements of description and all parts of the lease must be considered and weighed to arrive at the intention of the instrument. (p. 394).

4.  SAME—*Lease Construed Most Strongly Against Lessee Who Solicited and Prepared it.*

    Where there is a controversy as to whether a lease for oil and gas includes a tract of the lessor which may or may not be within the general description, and the court, after consideration of the particular description made by reference to a deed containing metes, bounds, courses, distances and acreage, and the general description stated by reference to incomplete adjoiners and estimated acreage, finds that the disputed tract is not covered by the particular description and is not reasonably within the general description, the lease will be construed most strongly against the lessee who solicited and prepared it, and the disputed tract held not to be included.  (p. 394).

5.  SAME—*First Executed Lease Construed Against Lessee as Not Including Tract Developed by Subsequent Innocent Lessee.*

    Equity will adopt the construction stated where the disputed tract has been leased for oil and gas by the land owner to another and innocent lessee who has taken possession thereof and made it valuable by successful and expensive development, while the claimant under the first lease stood by and permitted the other lessee to develop at his risk.  (p. 394).

Case Certified from Circuit Court, Roane County.

Bill by the United Fuel Gas Company against Godfrey L. Cabot and others. Defendant's demurrer to bill was overruled, and ruling was certified for review.

*Reversed.*

*R. G. Altizer* and *Raymond Dodson,* for plaintiff.
*Ambler, McCluer & Ambler* and *S. P. Bell,* for defendants.

LIVELY, JUDGE:

Having overruled a demurrer to the bill, the lower court, upon joint application, has certified its ruling for review.

The bill is for the purpose of enjoining defendant Cabot from taking oil or gas out of a tract of 45 acres more or less leased to him by W. S. Simmons in 1920; cancelling the said lease and removing it as a cloud on plaintiff's lease on the same tract, and for an accounting of the gas already extracted therefrom under defendant's lease. The litigation

arises by virtue of two leases each executed by W. S. Simmons and wife, the first dated the 17th day of August, 1905, to Joseph H. McDermott; and the other to Cabot dated the 16th day of June, 1920, both being duly recorded. Plaintiff, as successor in title to McDermott, claims that its lease was intended to and does cover the 45 acres tract in dispute; while defendants assert that it does not as shown by the lease itself exhibited with the bill. From the allegations of the bill it appears that W. S. Simmons, prior to 1905, owned approximately 1869½ acres of land in Roane county lying on the waters of Henrys Fork, acquired by him from different parties by sixteen separate deeds, the different tracts lying together and all forming one boundary, the acreage as shown by the deeds being approximately 1869½ acres; from this acreage he had sold and conveyed away prior to August 17, 1905, four parcels aggregating 282½ acres, leaving a residue of 1587 acres. In 1900 he executed an oil and gas lease to the South Penn Oil Company, embracing 725 acres, described in the bill, and lying to the northeast of his other lands. On the 17th of August, 1905, he and his wife executed the lease to McDermott now owned by plaintiff, describing the land as situated in Smithfield district of Roane county, West Virginia, on the waters of Henrys Fork "bounded substantially as follows:

On the North by lands of J. B. Stone,
On the East by lands of W. S. Simmons,
On the South by lands of D. J. McGlothlin,
On the West by lands of Boss Hudkins,

Containing 1223 acres, more or less, and being same land conveyed to the first parties by J. M. Simmons by deed, bearing date ————1877, reserving however, therefrom 200 feet around the buildings on which no well shall be drilled by either party except by mutual consent."

The lessee was to complete a well within nine months or pay an annual rental in quarterly payments of $305.75 each; in case oil was found one-eighth went to the lessor, and in case gas was found $100 per well per year was to be paid to the lessor while the gas was marketed and used; and upon completion of a well the rentals ceased for the remainder of

the term, which was ten years and as long thereafter as oil and gas or either of them was produced.

The bill charges that in 1910 McDermott sunk a well and obtained gas in paying quantities and that all the obligations imposed by the lease have from its inception been carried out by the lessee and his successors and assigns. The bill charges that the McDermott lease executed by Simmons and his wife was upon a printed form and there was not sufficient space therein for inserting and reciting the eleven separate deeds under which Simmons had acquired the land, so that the draftsman simply filled in an incomplete and incorrect reference only to one of the deeds, that is in the clause which says: "and being same land conveyed to the first parties by J. M. Simmons by deed, bearing date——— 1877", but the bill charges that it was the intention of the lessor to embrace and include in the lease the entire acreage owned by Simmons, less the 725 acres previously leased to the South Penn Oil Company; and 'to include a tract of 175½ acres acquired by W. S. Simmons from C. E. Monroe and others by deed dated January 6, 1897, excepting 123¾ acres thereof which had been previously sold, leaving at that time in the Monroe tract approximately 51¾ acres; and that this 51¾ acres, which is the tract in controversy, was intended to be and was included in the McDermott lease, although the deed recited that the land leased was that which had been deeded to lessor in 1877 by J. M. Simmons. A map showing the different tracts and the many and various contiguous land owners is by stipulation made a part of the record, and if it could be reproduced here it would add much to the clarity of this opinion. The bill further charges that W. S. Simmons, on June 16, 1920, leased to defendant Cabot a parcel of land described as 45 acres, for oil and gas purposes, which acreage is a part of the Monroe tract, deeded to Simmons on January 6, 1897, and the Cabot lease is exhibited with the bill. It appears that Cabot took possession of the 45 acres and commenced drilling upon it in April, 1922; and on the 29th of that month plaintiff notified Cabot that it claimed the 45 acres as covered by its lease of August 17, 1905, to McDermott, and that it had the exclusive right to operate on the land. Whereupon, Cabot temporarily

ceased drilling; but a short time afterwards continued to drill, obtaining a productive gas well, and since that time has been taking the gas therefrom. The various deeds to W. S. Simmons made to him prior to 1905 are exhibited with the bill; and it appeared that the deed from J. M. Simmons is dated December 20, 1878, and conveys to him a tract of 260 acres, more or less, on which tract McDermott sank the well in 1910. The bill was filed at November rules, 1922, but no injunction was asked for or awarded. The demurrer was filed May 21, 1923, and overruled the 8th day of the following December.

There are many grounds variously stated in the demurrer on which it is insisted that the bill is insufficient. The substance of the demurrer may properly come under three points: (1) that equity does not have jurisdiction; there being a plain, adequate and complete remedy at law by ejectment; (2) that while the bill charges that the McDermott lease was intended to include and does include the 45 acres in controversy, yet the lease itself exhibited with the bill shows that it does not; that the 45 acres tract is not and never was a part of the land deeded from J. M. Simmons to W. S. Simmons in 1877 or 1878, but that it was a part of the C. E. Monroe tract which was deeded to W. S. Simmons by Monroe and others in 1897; that the McDermott lease as to the territory included is vague and uncertain except as to the land deeded to W. S. Simmons by J. M. Simmons, as set out in the lease; (3) that even if equity has jurisdiction and the McDermott lease can possibly be construed as to include the 45 acres in controversy the plaintiff is barred by laches in standing by and permitting Cabot to spend money in drilling on the 45 acres tract and then after he had found a producing well to institute this suit to take it from him.

Does equity have jurisdiction? Where there is a senior and junior oil and gas lease upon the same land from the same owner equity has jurisdiction at the instance of the one in possession, to remove and cancel one as a cloud upon the title of the other, to preserve the status pending the litigation, and to settle the equitable rights between the parties. *Reserve Gas Co.* v. *Carbon Black Mfg. Co.*, 72 W. Va. 757; *Smith* v. *Root*, 66 W. Va. 633; *Upman* v. *Lowther Oil Co.*, 53

W. Va. 503; *Eclipse Oil Co.* v. *South Penn Oil Co.,* 47 W.
Va. 84.

In the final analysis the case turns upon a construction of
the McDermott lease, a duty which devolves upon the court
whether the case be at law or in equity. Does the McDer-
mott lease actually include the 45 acres of the Monroe tract
in controversy? That question must be determined by the
court from the writing itself, if possible. Defendant relies
upon the principle announced in *Freer* v. *Davis,* 52 W. Va.
1 to defeat equity jurisdiction. In that case the controversy
was over the title to the land, between claimants under ad-
verse titles; the plaintiffs claiming under Shields who had
been in possession for many years, and defendants under a
grant from the commonwealth to Thomas Proctor afterwards
forfeited and sold for non-payment of taxes in lots or par-
cels, lot No. one, which included the land under controversy,
having been purchased by Cyrus Ross under whom defend-
ants claimed. Defendants had ousted plaintiffs by threats
of violence, had leased the land to Finnegan for oil and gas
exploitation, and Finnegan had actually begun sinking a
well. The titles being adverse and defendants in posses-
sion equity would have no jurisdiction to settle the title and
boundaries, the plaintiff having no equity against defendant;
but would have jurisdiction to stay waste and preserve the
status of the property pending the proceedings at law to
settle the title. *Barth* v. *Shepherd,* 80 W. Va. 218; *Hannah*
v. *Lumber Co.,* 92 W. Va. 104. The present case is quite
different from *Freer* v. *Davis.* Both parties claim, under a
common lessor, a right to explore for oil and gas. Both
claim to have a producing well on the leased premises ripen-
ing their leases into a vested right in the lands. In *Reserve
Gas Co.* v. *Carbon Black Co.,* 72 W. Va. 757; and *South Penn
Oil Co.* v. *Knox,* 68 W. Va. 362, equity took jurisdiction to
determine conflicting claims as to ownership and possession
of leased lands claimed by senior and junior lessees under
the same lessor.

The main question raised by the demurrer is whether the
prior lease to McDermott, dated August 17, 1905, for 1223
acres more or less includes the 45 acres of land leased to
Cabot on June 16, 1920. The bill charges that the lease to

McDermott does include the 45 acres leased to Cabot; but the description of the land leased to McDermott as exhibited with the bill is rather indefinite, and defendant asserts that it does not in terms or by reasonable construction include the 45 acres; that the averment in the bill and the terms and description in the lease are inconsistent, and the latter controls. Properly construed, does the McDermott lease include the 45 acres of the C. E. Monroe tract now in possession of Cabot? The deed referred to in the McDermott lease as being the same land conveyed to Simmons and wife in 1877 by J. M. Simmons is inaccurate as to date. The deed exhibited with the bill from J. M. Simmons to W. S. Simmons is dated December 20, 1878, and conveys by metes and bounds, courses, corners and distances a tract of 260 acres more or less on Canoe Fork of Henrys Fork. The lease gives the acreage leased as 1223 acres, and bounds the land substantially by the lands of four other land owners, on the north, east, south and west. It does not purport to lease all of the lands owned by the lessor. It appears that none of the tracts stated as adjoining land owners touch the 260 acres tract except the W. S. Simmons (the land of the lessor) land stated to abound on the east. The Monroe tract, out of which the 45 acres is carved adjoins the J. M. Simmons 260 acres tract also on the east; or rather southeast; as well as another tract of 226½ acres owned by W. S. Simmons deeded to him by John C. Merrill in 1885, which adjoins the 260 acres tract on the east or rather on the northeast. The McGlothlin tract does not touch the 260 acres tract on the south. There is a small strip of 29 acres lying between which was deeded to W. S. Simmons by McGlothlin in 1876. Prior to that date the McGlothlin land did bound upon the 260 acres tract on the south and east. The Stone land said to abound on the north and the ''Boss'' Hudkins land said to abound on the west are each quite a distance from the 260 acres tract. At the time of the lease W. S. Simmons had obtained deeds to other tracts of land, four or five in number, which were between the 260 acres J. M. Simmons tract and the Stone and Hudkins tracts. The land intended to be leased containing 1223 acres more or less lies somewhere on the waters of Henrys Fork and touches Stone on the north, Simmons

on the east, McGlothlin on the south and Hudkins on the west. These bounding tracts do not touch each other; there are many other tracts which lie between them. The description by adjoiners is vague and uncertain; and it might or might not include the 45 acres of the Monroe tract in controversy, if no reference had been made to the 260 acres J. M. Simmons tract as being the tract of land leased. It is well settled that a particular description by metes, bounds, corners, distances and magnetic courses will prevail over a general description stating adjoiners. The former denotes the exact land; the latter more properly denotes location of the particular land conveyed. And where the land leased is referred to as having been acquired by the lessor by a certain deed from a certain person that deed becomes a part of the description and must be considered, using the calls, distances and particular description therein contained in fixing the boundaries of the lease. *South Penn Oil Co.* v. *Knox,* 68 W. Va. 362; *Coffindaffer* v. *Gas Co.,* 74 W. Va. 107. But there are two other elements of description in the lease which must be considered, the acreage stated and the adjoiners. Every part of the lease must be considered in arriving at the intention of the parties. *Uhl* v. *Railroad,* 51 W. Va. 106; Devlin on Real Estate (3rd ed.) p. 1882. The rules laid down in the books for the interpretation of written instruments all lead to ascertainment of the intention and meaning of the parties, the mutual intent being the controlling factor; the heart of every transaction. The J. M. Simmons deed referred to in the lease says 260 acres more or less; the lease names 1223 acres more or less as being leased; and names adjoiners which do not touch the 260 acres J. M. Simmons tract. Which shall control? It is not reasonably clear that the lessor did not intend to confine the boundaries to the 260 acres? But where does the land measured by the difference between the 260 acres (more or less) and 1223 acres (more or less) lie? The answer is "substantially" in the space between Stone on the north, W. S. Simmons on the east, McGlothlin on the south and Hudkins on the west. It will be observed that part of the Monroe tract in controversy owned by Simmons lies to the east of the 260 acres tract (and south of some of it) and joins it; while that acreage owned by Simmons

(the Merrill 226½ acres tract), alleged to have been leased
to South Penn Oil Company, lies to the northeast and
touches the 260 acres tract. It is by no means certain which of
these two tracts (the Monroe or the Merrill) was intended
as the eastern adjoiner of the lease. The McGlothlin tract
stated as the southern adjoiner does not lie south of the
Monroe tract—the reverse is true; and while the 29 acres
strip lying between the 260 acres and the McGlothlin may
be reasonably construed as included in the lease, the land
in controversy lying still further south and west of the
McGlothlin cannot be so construed. The general descrip-
tion by acreage and adjoiners does not necessarily or by
reasonable inference include the Monroe tract; and the par-
ticular description expressly excludes it. What person ex-
amining the county records would conclude that the lease
covered the Monroe tract, without making a survey?  A
surveyor would likely have extreme difficulty in defining
the extent of the lease. The bill says the acreage ascer-
tained by adding the number of acres stated in the eleven
deeds to W. S. Simmons and owned by him at the time
of the lease will be short of 1223 acres by over 100 acres
even after the Monroe 45 acres is included. The bill does
not say a survey has been made. The acreage is more or
less uncertain, intended to be so by the expression "more
or less" in the lease, and is not a very convincing element
of description in leases of this character. The lessor looking
to the land rentals does not usually err to his disadvantage.
Resort to quantity as an element of description is allowed
only when other superior elements fail through uncertainty.
Oil and gas leases are construed most strongly against those
who solicit and prepare them. *Bettman* v. *Harness,* 42 W.
Va. 433, 26 S. E. 271; *Yoke* v. *Shay,* 47 W. Va. 40. This
lease was prepared on a written form used by the lessee
and the bill says there was not room on it to include all
of the eleven tracts owned by Simmons by reference to his
deeds. The result is a very uncertain and unsatisfactory
description. The fault is attributable to the lessee. It
was in the lessee's power to make it certain. It is quite
generally held that the description of land in a conveyance
must be definite and certain, sufficiently so that the land

may be identified; otherwise it is void for uncertainty. *Hoard* v. *Ry. Co.*, 59 W. Va. 91; Devlin on Deeds, sec. 1010. An examination of the lease stating the land to be the same as conveyed to the lessor by J. M. Simmons in 1877, and an inspection of the deed referred to would indicate to Cabot that the 45 acres of the Monroe tract was not included. The 45 acres tract was not occupied, no well on it; while the 260 acres tract was in actual possession of the lessee and a producing well had been drilled on it in 1910. Would the uncertain description put him on notice that the 45 acres tract might be under lease? Simmons, the owner, said it was not under lease. Possibly the uncertain description in the lease considered as a whole might have induced caution and full and careful investigation; but on the other hand after he had taken the lease and was put in possession, had erected a rig and begun drilling he was notified by plaintiff that it claimed the right under its lease to explore for oil and gas on that tract. Plaintiff did not attempt to stop him by legal process. It was content to rest upon its notice, and permitted him to expend further money and labor in proving the land as gas producing territory. If the strata had been barren and unproductive there would likely have been no litigation. The profound secrets hidden in the earth are solved definitely only by those who actually go down after them; and many disappointments and failures are recorded even where ventures are made in what theorists have declared proven oil and gas territories. Plaintiff evidently did not have much faith in the inclusion of this 45 acres in its lease, or desired to take advantage of defendant's venture if it was successful. The rights of plaintiff, if any, should have been promptly asserted and the status of the property preserved pending the judicial inquiry. *Tatterson* v. *Hewitt*, 195 U. S. 309. The equity in that regard is for defendant. The express terms of the McDermott lease do not include the 45 acres tract in controversy; and taking into consideration the description by adjoiners and acreage stated, together with the reference to the J .M. Simmons deed; the situation of the parties as stated in the bill; and construing the lease most strongly against the lessee, we cannot construe it so as to include

the 45 acres of the Monroe tract in controversy; especially in view of the fact that plaintiffs have, by delay, permitted defendant to obtain a vested interest in the land by sinking a producing well.   The demurrer should have been sustained, and we so answer the questions certified.

*Reversed.*